THE JACKSONVILLE & ATLANTIC RAILROAD COMPANY, PLAINTIFF IN ERROR, VS. JAMES F. WOODWORTH, DEFENDANT IN ERROR.

1. If the omission of the Clerk of the Circuit Court to record a præcipe before issuing the original writ, as he is required to do by Section 4, p. 811, McClellan's Digest, can be taken advantage of by the defendant, it cannot be done primarily in the Appellate Court, nor can it be done in the Circuit Court after a general appearance.

2. Where there is a written contract by which one of the parties agrees to construct a building for a certain price by a certain time, a waiver or abandonment of the provision as to the time for its completion is not a waiver or an abandonment of other features of the contract.

3. A payment of a small part of a deferred sum in advance of the time fixed in a contract, and the payment after the completion of the work of an amount in excess of the sum agreed upon in the contract, do not sustain a verdict for a further sum in excess of the amount paid, where there was in the dealings of the parties, pending the performance of the contract, nothing to show that either of them claimed, or admitted, or understood that any other sum than that prescribed by the contract was to be paid, or that the contractor before or during the execution of the work, refused to perform his undertaking at the price fixed by the contract, but the evidence shows that

during the execution of the contract and after the completion of the work, he recognized the amount stated in the contract as the sum payable for the work.

4. Whether or not a contract has been abandoned,.is to be proved by evidence of the facts constituting the abandonment, and not by the opinion of a witness.

Writ of Error to the Circuit Court for Duval county.

STATEMENT.

The declaration alleges that the railroad company was on the first day of January, 1886, indebted to Woodworth, the plaintiff, defendant in error, for work done and materials furnished by him at its request, in the sum of $1,674.47, on which was paid on February 1, 1886, the sum of $540.42, and on May 28th of the same year, the sum of $364.85, leaving the sum of $770 due. There is also a similar count for money paid, and a count on account stated, leaving the same balance due. The account filed with the declaration debits the railroad company with certain amounts for labor (stating the days and hours of service,) for painting, and for laying brick, cost of brick, hardware, shingles and lumber, the several sums aggregating $4,706.07, and credits it with $1,100 cash, and with sums paid to different persons on divers days in November and December, 1885, the first date in November being the twentieth, and the dates in December being the 2d, 7th, 27th, and 30th. The balance stated to be due January 1st, 1886, being $1,199.17, and upon this balance is a credit of $540.42, as of February 1st, and one after without date, of $364.05, and the final balance being $294.70.

The railroad company filed three pleas:

1st. Never indebted.

2d. That on the —— day of September, 1885, it and the plaintiff entered into an agreement, which is in writing, and

set out in the plea, whereby the latter undertook as follows: To erect and complete on or before October 1st, 1885, according to certain specifications admitted to be in plaintiff's possession, a building to be known as the Pavilion, at Pablo Beach, the terminus of the defendant's railroad, the plaintiff to furnish at his own cost all the material, and cause to be performed all the workmanship in accordance with the plans and specifications within the period aforesaid, in a good workmanlike and substantial manner, in accordance with the said plans and specifications, in a good workmanlike and substantial manner, to the satisfaction of the defendant; and whereby the defendant promised and agreed to furnish free transportation back and forth for plaintiff over their railroad until the building should be completed, and for all persons who should be employed by him in and about the building, once down and back free; to load and unload all the material to be used in the erection of the building and deliver the same to plaintiff alongside of the Pavilion lot; to pay to plaintiff one thousand dollars in four weekly installments of $250 each while the work is in progress, with which to pay for labor; and when the said work shall have been completed and the building ready for delivery, according to the plans and specifications, and occupied by the defendant, and the plaintiff shall have furnished to defendant satisfactory evidence that there are no liens on the building for money due to laborers employed by him, or material furnished, to pay him $2,980, making in all $3,980 for the completion of the work and building.

That defendant had, before the commencement of this action, performed all the obligations required of it by the above contract, and had paid to plaintiff a greater sum than $3,980 on account of the contract, to-wit: $4,461.84, and

that plaintiff's cause of action is the same, and no other, than for the work and material mentioned in the contract and agreed by the plaintiff to be performed and furnished.

3d. Payment and discharge of the plaintiff's claim.

The plaintiff joined issue upon the first and third pleas, and to the second filed replications as follows:

First. That before the time had elapsed for the fulfillment of the agreement, the same was by mutual consent abandoned, and that plaintiff at the special instance and request of defendant performed the labor and furnished the material set forth in the account annexed to the declaration and as alleged therein, notwithstanding the abandonment of such contract, and that the defendant is indebted to the plaintiff as set forth in the declaration and account, outside of the alleged contract.

Second. That defendant has not done and fulfilled its obligations and requirements under the contract, in this, that it did not deliver the contract and specifications at the time agreed upon, and thereby extended and delayed the performance of the contract, and did not carry and deliver the material as by the terms of the contract it was bound to do, and did not carry the plaintiff and his workmen as by the terms of the contract it agreed to do, causing the plaintiff great loss and damage, and notwithstanding the defendant's breach of the contract, it still employed the plaintiff to finish and complete the work set out and described therein, and promised to pay plaintiff for his work and material according to the actual value thereof.

The defendant took issue upon these replications to the second plea.

The jury rendered a verdict in favor of the plaintiff for $319.09, and a new trial having been refused, judgment was entered, to which the defendant has taken a writ of error.

The bill of exceptions recites that the plaintiff testified to having built the Pavilion at Pablo Beach, and to each and every item of his account both debit and credit in detail, and that the balance due him on or about February 1st, 1886, was $294.70. He then specifies delays of the defendant in sending the brick for the foundation; that on September 20th he sent five kegs of nails to the depot and asked the yardmaster to send them to Pablo, but that they were still there on the 25th; that a freshet occurred a day or two after, and he did not get them till October 6th; that he paid $5 for carrying one keg around by Mayport; that a car load of flooring was left out in the rain for two weeks by defendant, and it had to be carried back and exchanged and brought back, and he had to pay the cost of unloading, carrying it into the Pavilion and out again and loading, and then wait until it was exchanged and returned; that his men became demoralized because they had nothing to do; that he had to pay them; that men whom he hired could not get down to Pablo; that there was no schedule, could get no provisions and nearly starved, and had to bring them around by Mayport; the tin flashing for roof was delayed about ten days; it was expensive; had to pay men $2.50 or $3.00 per day for the work of common laborers worth only $1.25; that the wages he paid and charged the defendant were usual and reasonable; that he could not work any faster because the defendant did not keep him supplied with materials. That they made him clear out the Pavilion for an excursion before it was finished, and he had to pay for this and put the material back again. "On or about November 24th I demanded a settlement. They showed me an account. It was more than the contract. They paid more, and did not object. I was entitled to at least eighty days,

but I charged them but seventy." That the item of seventy days, at $4 per day, he says elsewhere, constituted a reasonable compensation for his services in superintending the building of the Pavilion.

The defendant introduced the contract and specifications, and also one Henry S. Ely, who testified that he was, at the date of the contract the defendant's treasurer. The bill of exceptions states that he "identified the statement of account rendered by the plaintiff to the defendant as showing the status between the parties to the suit, * * " and it was introduced. This account consists of a statement dated Jacksonville, Fla., Nov. —, 1885, and reads: "Amount due for labor and materials for building Pavilion at Pablo Beach." It states amounts due named persons and firms for labor, lightering bricks and for material; these amounts aggregating $3,390.01. At the foot of it is the certificate of a notary public that it had been sworn to by plaintiff on the 24th day of November as being correct. This is followed by an account dated November 18, 1885. J. & A. R. R. Co. to Jas. F. Woodworth, Dr., the first item of which is, "To building Pavilion at Pablo Beach, as per contract, $3,980.00. The other items make the amount of the bill $4,023.01, and it is credited by $1,100 cash received, leaving the balance $2,923.20.

This witness also produced an order drawn on November 11th, on the plaintiff by J. L. Bettes and W. E. Gruber, in favor of First National Bank of Florida, "on account of painting Pablo Beach Pavilion," the same being accepted by the plaintiff, to be paid by defendant company, "on settlement of amount due me under Pavilion contract," and an order of November 18th by plaintiff on J. & A. R. R. Co., in favor of E. Gruber for the sum of $415, amount due for painting Pavilion, the same being receipted by Gruber, No-

vember 25th; this order for $415 appearing to have been paid by order of witness as treasurer of the defendant company, dated November 20th, in favor of Gruber for same amount, " acc't of Jas. F. Woodworth;" and an order of November 17th in favor of Clark, Fairhead & Co., for $320.75, on the defendant, to be charged "for account of shingles used in Pavilion," which appears to have been paid November 20th.

He further deposes that the defendant had paid the plaintiff upon his account for work done for the defendant on the Pavilion $4,461.84; that on September 11th there were made to plaintiff through him as treasurer of defendant, the following payments: September 11th, $250, September 19th, $250, October 1st, $300, October 17th, $200, November 10th, $100, and to Gruber on November 20th, the above sum of $415.00.

There is opposite each item, except one, of the above verified account, a memorandum of payment, giving the date of payment of each item, which dates run from November 20th to December 7th, 1885. These memoranda, the witness says, were made by him for his convenience in keeping his accounts of what he paid, as the payments were made by him in the course of his duty as treasurer. Excepting these memoranda and one item, the last appearing on the account, which is, "Pd. J.M. S. $50. 11-24-85;" he says this account is in all respects as he received it in his capacity as treasurer from the plaintiff.

The plaintiff, being recalled, introduced a letter from J. J. Daniel, the president of the defendant company, dated Jacksonville, Fla., October 9, 1885. It is as follows: "I was at Pablo Beach yesterday, and regretted to find that you were not there. The work done thus far seems to be well done, and the material good, so far as I could inspect

it in a very limited time, but the building is progressing very slowly. I am willing to make all due allowance for the detention caused by the late bad spell of weather, but must insist that you put an additional force on and complete the building without further delay. We will be prepared at almost any time now to open the road. We limited your time for the completion of the building to October 1st, in order that the Pavilion might be ready, when the road was open, for the protection of visitors. I will be down again in a few days, and again say, I must insist upon your pressing the work forward to the earliest possible completion." ·

The plaintiff also testified that early in September, directly after the execution of the contract, and after having employed his hands and contracted for the material necessary to build the Pavilion, he went to Pablo with his hands ready to go to work, that it was several days before any transportation for materials was furnished, and that the company detained him by non-delivery of the materials during nearly the entire month of September. That the nails and the flashing were particularly delayed, and that meanwhile he could not proceed with his work for lack of said material. That he called it to the attention of the officers in charge of the road, with the result stated previously. That during these delays, caused by the failure of the company in transporting and delivering material, as provided in the contract, he had a number of hands idle whom he was compelled to pay or take care of or lose, at the risk of not being able to supply their places in time to complete his job within a reasonable period. That owing to their delays and hindrances he considered the contract had been broken and violated by the defendant, and abandoned, and that he further came to this conclusion because the company did not insist upon the time named in the contract,

to-wit: October 1st, "but thereafter dealt with him without reference to the contract, as shown by the letter from Col. J. J. Daniel," and further from the fact that he had placed upon the Pavilion upwards of $700 work and materials not called for by the contract or the specifications.

There is also testimony showing that the $50 order was included in that for $415, or that only $415 were paid by the treasurer on these orders.

The defendant then introduced as a witness Col. J. J. Daniel, the president of the company, who stated that soon after the execution of the contract, which was in the early part of September, the county was visited by a rain storm, and the road being in its inception, its construction and the operation of the cars upon the track were very much delayed, a condition of affairs understood by the plaintiff, and the company was not in a condition until the middle of the latter part of the month to do very much toward transporting material necessary, and which the plaintiff desired to have carried to Pablo, but that notwithstanding this the road managed to lay down there sufficient material, as he believed, to keep the plaintiff and his hands employed all the time or very nearly all the time; that he gave this statement of his own knowledge, because he was frequently over the road and at Pablo Beach nearly every day, and saw the plaintiff and his hands and the work progressing there, and if there was any time when plaintiff was hindered in proceeding with his work, it was very inconsiderable. That he had upon the ground, nearly the whole of the entire time, some material which he might have been working into the building.

Referring to his letter, given above, this witness says that the work had progressed very slowly, and it was not perceptible to him that under all the circumstances, it was

at all excusable, particularly from or about October 5th on until the plaintiff quit work; and that he did not finish the building as he had contracted to do.

The witness was here asked: " Was the contract made ·with the plaintiff, and in evidence in this cause, ever abandoned?" and the question being objected to because it called for a legal conclusion, and the facts should be inquired for, the objection was sustained and an exception taken to the ruling.

The witness, in answer to a question as to what was done, deposed that the road had paid the $1,000 mentioned in the contract, almost literally as therein provided; that notwithstanding the freshet and delays alluded to, which of course could not be controlled by it, the road had transported and laid down at the building the material to be used in the erection of the Pavilion; that it was owing to the fact that the delay in the completion of the building by the first of October as named in the contract, had been overlooked and not insisted upon as had been mentioned in his letter; "that nothing had ever been said between him and the plaintiff, nor within his knowledge between the plaintiff and any one else interested and authorized on the part of the road, tending to show any formal abandonment of the contract by either of the parties or mutually." That he had never heard any complaint on the part of plaintiff, nor any claim from him that the contract had been abandoned, until after the commencement of this suit. '

It may be stated here that the suit was instituted in the latter part of October, 1886.

J. M. Schumacher testified in substance about the same as Col. Daniel, as to freshet and delays, and that he was at Pablo often, and that from his observation there the plaintiff was always, or nearly always, supplied with material to

keep his hands engaged, and that at no time, and if at any time, a very inconsiderable period, was he delayed or his hands out of employment on account of lack of material. That he had never heard of any abandonment of the contract formally on the part of either party or by mutual consent, nor any mention thereof; nor had he ever heard of any complaint upon the part of the plaintiff until just prior to the commencement of this suit, when Mr. Challen, the plaintiff's attorney, called upon witness and demanded the payment of some considerable sum of money, which the road disclaimed owing. That he knew that a long time before, and shortly after the rendition of the accounts placed in evidence by the defendant, handed in by the plaintiff, an amount of money had been paid, as shown in what Mr. Ely testified to, largely in excess of the contract price, and that he therefore answered the demand of Mr. Challen that the road did not owe Mr. Woodworth anything; that on the contrary, Mr. Woodworth was in debt to the road several hundred dollars, and that if he was worth anything a suit would have been brought against him.

Julius Hayden, a witness for defendant, testified that after the first delays in the early part of the period covered by the beginning of this contract, that after the 25th of September the road had been as diligent as it could under the circumstances have been, it being just placed in running order, and having been washed up and interfered with by the heavy rains. That it had at all times transported all the material the plaintiff called upon it to transport for him, and if there had been any delay in carrying material for plaintiff it had been inconsiderable, and confined, as well as he recollected, to some tin flashing and some nails and lumber for substantially the period testified to by the plaintiff.

W. A. McDuff, a witness for defendant, testified that he

was called upon by the plaintiff to go to Pablo and see the work, that he did go with a view to determining whether he had complied with his duty in the premises; that he found the Pavilion incomplete; that there was considerable work to be done to complete it; that he examined the specifications attached to the contract and found he had not finished it according to said specifications; that $4 per day as wages for superintending the work was quite all it was worth.

The other facts are stated in the opinion.

*Walker & L'Engle* for Plaintiff in Error.

*J. R. Challen* for Defendant in Error.

RANEY, C. J. I. The first assignment of error in this case is, that the præcipe for the summons *ad respondendum* was not recorded as required by law. The statute, section 4, page 811, McClellan's Digest, makes it the duty of the clerks of the Circuit Court to transcribe "into their memorandum books" each præcipe before issuing the original writ of summons. If any advantage can be taken by a defendant of the failure of the Clerk to perform this duty, it must be done in the Circuit Court, and at least before a general appearance to the writ. Certainly the objection cannot be raised primarily in the Appellate Court. With these observations, we pass to the question whether or not the verdict is contrary to the evidence.

II. By the terms of the contract the Pavilion at Pablo Beach was to have been completed on the first day of October. The plaintiff, Woodworth, continued subsequently to prosecute the work. From his doing so, and the mere assent thereto (whether express or implied,) by the railroad company, no modification, waiver or abandonment of the

contract as to any other of its features than that of the time
for completing the building, was to be inferred.  Benjamin's
Principles of Contract, 139 ; Phillips vs. Seymour, 91 U. S.,
646 ; Stewart vs. Keteltas, 36 N. Y., 388 ; Cooke vs. Mur-
phy, 70 Ill., 96.  The fact that the plaintiff may have had a
right to recover damages of the defendant on account of
delays to which it put the plaintiff by not delivering mate-
rials promptly in accordance with the contract, did not
entitle him to any more or different pay for building the
Pavilion, than the sum specified in the contract.

The parties had the right to alter the contract as to any
of its terms, if they saw fit to do so ; (Munroe vs. Perkins,
9 Pick., 298 ; Rogers vs. Rogers & Brother, 139 Mass , 440,
and authorities *supra*), but whoever asserts that there has
been any material alteration in, or abandonment of, a con-
tract, pending its execution, is under burden to prove the
allegation.

From the time of the execution of the contract to the
ninth of October, there was nothing to indicate an abandon-
ment of it.  On that day the president of the railroad com-
pany wrote the letter to be found in the statement of the
case, upon which letter the plaintiff, as shown by his testi-
mony, relies as evidence that the contract had been aban-
doned.  There is in this letter an admission of detention
caused by bad weather, and an expression of willingness to
make due allowance for it ; but the inference to be drawn
from the letter as a whole is that he expected the plaintiff to
complete the building, and there is in it nothing indicating
an abandonment of the contract except as to the time for
completion of the work.  He complains that the building is
progressing very slowly, and insists that the plaintiff shall
put on additional force and complete it without further
delay ; all of which must, in the absence of proof of a new

contract, be considered as an insistance by the company of a prompt performance by the plaintiff of the September contract in all its features except that of time for the completion of the work. .

The plaintiff states that on or about the 24th of November he demanded a settlement, and that "they" (meaning, it is to be assumed, some representative of the defendant,) showed him an account which was more than the contract. He gives no further explanation, or description of this account. The testimony of Ely, the treasurer of the company, shows that the plaintiff rendered the company an account, consisting of a statement, the commencement of which is as follows:

"Jacksonville, Fla., Nov. —, 1885.

"Am't due for labor and material for build'g at Pablo B'ch."

This heading is followed by the names of persons and firms, and opposite each name is the amount due them for labor or materials. Below this is a certificate of William C. West, a notary public, bearing date November 24th, 1885, to the effect that the plaintiff had personally appeared before him, and being duly sworn, "affirms that the within statement of amount due for labor and material is correct." Then follows the following account:

"Jacksonville, Fla., Nov. 18, 1885.

"J. & A. R. R. Co.　　　　　To Jas. F. Woodworth, Dr.

| | |
|---|---:|
| To building Pavilion at Pablo B'ch, as per contrac t | $3,980.00 |
| For casing 17 windows, at $1.50 per window . . | 25.50 |
| 1 sliding door lock . . . . . . . . . . . . | 2.50 |
| 3 doz. barrel bolts on sliding doors . . . . . . | 7.20 |
| Labor for same . . . . . . . . . . . . . . | 3.00 |
| 1 extra column in building . . . . . . . . . | 5.00 |
| | $4,023.20 |
| Rec'd by cash . . . . . . . . . . . . . . | 1,100.00 |
| | 2.923.20 |

The item: "To building Pavilion at Pablo Beach, as per contract, $3,980," is an assertion by the plaintiff that he had earned, and was entitled to debit the company the sum stated for building the Pavilion, and this sum being the same as that mentioned in the written contract of September, it, in the absence of proof of another and substituted contract, is to be taken as an identification of the September contract, and an admission of it as being the one under whose terms he had constructed the building, and was claiming a credit of the stated amount. The other items of this account, one of which is expressly stated to be "extra," must, in the absence of any explanation to the contrary, be regarded as additional to the contract, but not as neutralizing the admission made by the first item. Their presence in the account is not inconsistent with the idea of the existence of the contract as indicated by the first item. The credit item of $1,100 corresponds in amount with the aggregate of the five cash payments which Ely, the treasurer of the company, says he made to plaintiff as follows: September 11th, $250, September 19th, $250, October 1st, $300, October 17th, $200, November 10th, $100. The first four of these payments correspond in their aggregate sum with that of the four weekly installments of $250 each, "with which to pay for labor," which the contract provided should be paid to plaintiff while the work was in progress, and it is to them that the president of the company refers in speaking of one thousand dollars as having been paid "almost literally" as provided by the contract. Considering the credit of $1,100 in connection with the testimony of Ely, all of which payments had been made prior to the making or rendering of the account of November 18th, the only reasonable construction to be placed on such credit is, that it is an acknowledgment by the plaintiff of so much as having

been paid on the September contract. Even if we assume that $43.20 of it, which amount is sufficient to satisfy the additional items, was intended by the plaintiff in rendering his account, to be applied to those items, he must still be understood as applying $1,056.80, the balance of the credit, to the $3,980 debit for building the Pavilion under the September contract.

The aggregate of the items in the sworn statement of the amount due for labor and material for building the Pavilion, is *as it was rendered*, $3,340.01. In so far as the evidence shows, these payments appear to have been made to the persons named in it. On the eleventh of November, the plaintiff accepted an order drawn on him by J. L. Bettes and W. E. Gruber, in favor of First National Bank, for "fifty dollars on account of painting Pablo Beach Pavilion," and it was accepted by plaintiff " to be paid by the J. & A. R. R. Co. on settlement of amount due me under Pavilion contract;" and on November 18th, the day on, or as of, which the above account was made out, the plaintiff drew on defendant company, in favor of E. Gruber, for $415, "amount due them for painting Pavilion," on which is receipted by Gruber under date of November 25th, and seems to have been paid by draft of the treasurer of the railroad company, dated the 20th of the same month, and the memoranda made by Ely, the treasurer, on the sworn statement represents it as having been paid on this day. This last order is shown to have covered the former acceptance of $50, and it seems that only $415 were paid. There was also, as is shown by the statement, an order drawn by plaintiff November 17th on defendant, in favor of Clark, Fairhead & Co., for $320.75, " for account of shingles used in Pavilion," which was paid on the 20th of the month.

These orders and the acceptance, not only show that payments were made to persons named in the sworn state-

ment, but also that the plaintiff, both prior to and on the day of the date of the account of November 18th, in which he recognized the September contract, drew in favor of persons furnishing materials for and doing work on the Pavilion, but there is no mention or explanation from either the plaintiff or the defendant of any prior or subsequent conversation or negotiation between them as to the plaintiff's drawing, yet it is evident that the terms of the plaintiff's acceptance of the order of November 11th, are entirely consistent with the idea of a continuation of the September contract; and in the absence of evidence of another contract they are inconsistent with any other idea. They do not indicate any understanding or intention on his part that this contract had been or should be interfered with, as to the amount to be paid for the building, and his purpose evidently was that the railroad company should pay the amount of the order thus accepted out of what would be due him on a final settlement under that contract.

In view of the date of the account, the natural inference is that the plaintiff must have completed his work on or before that day, for whether we regard the day of its date, November 18, 1885, to be the one *as of which* or *on which* the account was made up, it speaks from that day, and an assumption or conclusion that the building had not been completed, or that the other items had not been furnished and done at that time, is entirely inconsistent with the paper as an account representing the indebtedness of the defendant to the plaintiff.

There is then in the dealings of the parties up to the completion of the building thus asserted by the plaintiff, nothing to indicate that he had understood or believed, or that the defendant intended, that the former was to receive any other compensation for the building than the sum of

$3,980, or that he was doing the work under any other terms than those mentioned in the contract, relieved, however, of its limitation of the first day of October as the time for completion. The subsequent items are, in view of the first item of the account, evidence only of additional work not covered by, nor affecting the contract. No payments except the $1,100 were made until two days after the 18th of November, the day by or on which the plaintiff must be assumed to have completed his work. There is up to this point no evidence that the contract had been abandoned, and there had been substituted in its place an agreement that the building should be constructed at the expense of the defendant company under supervision of the plaintiff, and that he should be paid a per diem compensation for his services, as he, in effect, claims in this action.

The plaintiff does not pretend that there was any express or formal abandonment of the contract, and the evidence upon the part of the defendant is that there was none. Whether there was an implied abandonment, neither party could testify as to, except by stating the facts relied upon as constituting such abandonment. The circuit judge ruled to this effect. What then are the facts, as disclosed by the record, upon which the plaintiff must rely, to sustain his theory of implied abandonment of the original contract?

There is much conflict of testimony as to the alleged delays, but admitting them, it is plain that the plaintiff never found in them cause for refusing to perform the contract, or for proposing a change of its terms, but, on the contrary, as indicated above, it is clear that during the progress and upon or after the completion of the work, he recognized the contract as continuing. In September and October he received payments under it, and in November when he makes out his account and claims to be entitled to a settle-

ment, he is found recognizing it as the law regulating the price he was to be paid for building the Pavilion, as he had previously in the same month in the acceptance alluded to above.

The cash payment of November 10th of $100, in excess of the $1,000, is not of itself evidence of anything more than a concession *pro tanto* by the defendant as to the time of payment of the deferred balance of $2,980. As to the plaintiff's statement, made in support of the idea of abandonment of the contract, that he had placed upon the Pavilion upwards of $700 in work and materials not called for by the contract or the specifications, it is sufficient to say that no additional materials other than those specified in the above account of November 18th are shown to have been furnished, nor are any sued for in this action, and as to extra labor it is to be assumed that that sued for now and hereinafter more fully explained, constitutes all the labor used in making such building according to the contract with the additional items mentioned in the above account. The excess of the account sued on is about $725 over the contract price of the building.

The facts upon which we must rely as evidencing the alleged abandonment are the rendition of the sworn statement and the payment of the same by the railroad company. Unquestionably the payment of anything in excess of the amount called for by the contract was at least a concession by the defendant, but under the circumstances can it be said to be evidence that the plaintiff had done the work under an agreement that the company would pay more, or that there had been an abandonment of the contract, and an implied understanding that the plaintiff should be paid the cost of the labor and materials and the value of his services. If pending the execution of the contract there had been

such a change; if, to instance, the plaintiff had notified the defendant that he would not pursue the work further except upon condition that it should pay as thus indicated, and the company had consented, either expressly or impliedly, the plaintiff could, as held by authorities *supra*, have recovered for the cost of the labor and materials, and a *quantum meruit* for his services. Nothing of this kind was done; and the acts of the plaintiff in recognizing the contract have been such that the payment by the company of the amount in excess of the sum specified in the contract does not, standing as it does, unsupported by other evidence, justify the inference that there had been an abandonment of the contract as to the amount to be paid, and the substitution of an agreement, either express or implied, of the character contended for by the plaintiff, and a performance of any part of the work thereunder.

It is apparent that when the plaintiff rendered the account in November, he did not make any claim for compensation for his own services as superintendent. The unverified account is altogether inconsistent with any such claim. The sworn statement is a list of third persons who had furnished materials and performed labor, and of the amounts due them, which statement he has deposed to be correct.

It is a fact that in the account annexed to the declaration no other items of materials furnished for the building are to be found than those appearing in the sworn statement. The excess of the account sued on over the sworn statement is in the matter of the plaintiff's charge of $280 for his own services, and in that of labor. The same, or as it would seem eight of the nine laborers to be found in the statement appear in the account annexed to the declaration, and about thirty others, and the aggregate of the amount charged in the labor account for the eight over that stated in the for-

mer to be due the nine is about $468, and the total sum sued for on account of laborers is about $1,100 in excess of that stated in the sworn account to be due for labor. The fact that the plaintiff did not, when rendering his account in November, 1885, make claim for all that he claims in the action now under consideration, is evidence that he did not understand that he was entitled to do so. Assuming as we may, that what is charged on labor account in the bill of particulars annexed to the declaration represents all that was expended on that account in the construction of the building, the conclusion follows that the purpose of the sworn statement was to represent only such labor as he had not paid for; or, in other words, such as the money was still due him for. There is in the record no attempt at an explanation why the sums now sued other than or in excess of those mentioned in the sworn statement were not claimed when he rendered his account or when he " demanded a settlement." The president of the railroad company testified that he had never heard any complaint upon the part of plaintiff, nor any claim from him that the contract had been abandoned, until after the commencement of this action. Schumacher says, in effect, that he also had heard nothing of the kind until just prior to the commencement of the suit, (which was in the latter part of October, 1886), when the plaintiff's attorney called upon him and demanded payment of some considerable sum of money. He answered the demand of the attorney by stating that the road did not owe the plaintiff anything, but on the contrary, the plaintiff was indebted to it several hundred dollars, and that if he was worth anything suit would have been brought against him. He states as his reason for doing this that he knew shortly after the plaintiff rendered the accounts that an amount of money largely in excess of the contract price

had, as testified to by the treasurer of the company, been paid. The statements of the president and Schumacher are not contradicted by any one. The plaintiff does not specify the time as of which he first regarded the contract as having been abandoned, nor is there in the record anything proving that prior to the time at which, as against him, it is to be assumed he had completed the work, he understood that it had been abandoned, or that subsequently to such period of completion he represented to defendant that such had been or was his understanding except or until his attorney made the demand upon Schumacher alluded to above. It is to be remembered that the testimony as to delays was adduced for the purpose of proving an abandonment of the contract, and not to support any claim for damage sustained by loss of time through such delays; there is no such count in the declaration and no proof to sustain the count of account stated.

If an express promise to pay more than the contract price had been made by the defendant after the completion of the work by the plaintiff, such promise in the absence of a new consideration to support it, would have been void for the want of a consideration, and the actual payment of an amount in excess of what was due under the contract made under similar circumstances, does not create an obligation to pay anything in addition to the excess thus paid. The verdict was contrary to the evidence and is not supported by it, and a new trial should be granted. Branch & Clark vs. Wilson, 12 Fla., 543; Pensacola & Georgia Railroad Company vs. Nash, 12 Fla., 497; Sanderson vs. Hagan, 7 Fla., 318; Miller vs. White, 23 Fla., 301.

It will be ordered accordingly.