## CHARLESTON.

WIGGIN v. MARSH LUMBER CO. *et al.*

Submitted September 21, 1915.   Decided October 26, 1915.

1. SALES—*Breach of Contract—Failure to Accept.*
    Failure of the vendee to accept for shipment, under a contract therefor, lumber delivered by the vendor at the designated place without being ordered so to do, does not constitute a breach of the contract by the vendee, he having the right to appoint the time of delivery, unless with knowledge thereof he unreasonably delays acceptance.   (p. 9).

2. CONTRACTS—*Breach—Waiver—Right of Recovery.*
    Though strict compliance as to time of performance be waived, the waiver does not prevent the party not himself in default from recovery of the party in default as to breach by him of other stipulations of the contract.   (p. 15).

3. SALES—*Contract—Construction—Place of Delivery.*
    Unless otherwise provided, in a contract for the sale and delivery of lumber f. o. b. cars, the place of delivery ordinarily is the place of inspection.   (p. 13).

4. SAME—*Contract—Contsruction.*
    In such contract, the contrary not otherwise appearing, it is the duty of the vendee to provide the cars for shipment.   (p. 15).

5. DAMAGES—*Breach of Contract—Burden of Proof.*
    On the claimant rests the burden of proving damages, and, when so provable, he must establish the quantum thereof with reasonable certainty.   (p. 12).

6. TRIAL—*Binding Instruction—Requisites.*
    A binding instruction usually should contain, in abbreviated form, all the material facts proved upon the trial. The omission of part of such facts renders the instruction erroneous.   (p. 16).

Error to Circuit Court, Raleigh County.

Action by H. D. Wiggin against the Marsh Lumber Company and others. From the judgment, plaintiff brings·error.

*Reversed, and new trial awarded.*

*File & File*, for plaintiff in error.

*Herbert Stansbury* and *McGinnis & Hatcher*, for defendants in error.

LYNCH, JUDGE:

In assumpsit for damages occasioned by the breach of a contract for the sale and delivery of various grades of oak, chestnut and poplar lumber at fixed prices, H. D. Wiggin recovered against Marsh Lumber Company, J. H. Poteet and E. S. Poteet a judgment for $117.30, and, being dissatisfied therewith, obtained this writ upon ·several assignments of error. He challenges the correctness of directions by the court ·to the jury, rulings on the admission and rejection of evidence and on his motion to grant a new trial. These questions, being correlative and interdependent, properly may be considered together.

The contract charged to be breached by defendants bears ·date July 11, 1908. By it they agreed to deliver to plaintiff, f. o. b. cars at Surveyor, a shipping station on the Chesapeake & Ohio and Virginian railways (each having a separate depot thereat), 250,000 feet of oak and chestnut and a like quantity of poplar. Except as to 50,000 feet of poplar to be so delivered in the month of October, 1908, the contract required delivery within twelve months from its date, in quantities as directed by the purchaser, who was to pay cash therefor upon receipt of the inspection and invoice of the shipment. Other provisions stipulated a sum as damages agreed on as compensation for defendants' failure or refusal to make delivery as therein required, that sum being five dollars for each one thousand feet not delivered; and that, in the event of such default and action to recover therefor brought, no proof of the extent of the resultant injury was to be demanded, but the amount fixed as liquidated damages was to be recovered without proof other than non-compliance and deficiency in quantity.

Defendant having complied only to the extent of 159,375 feet within the time limited by the contract, plaintiff brought his action August 15, 1910, but thereafter accepted other shipments and to defendants credited the amount thereof on the stipulated damages he might obtain. By notice of recoupment, they charge that by his acts and failure to act plaintiff rendered compliance by them impossible, in that, while they were always ready and willing to comply and cut and manufactured many thousands of feet of the lumber and stacked it in a secure manner, he, though often requested so to do, failed to furnish orders and direction for delivery of the remainder of the lumber within twelve months, and failed to cause it to be inspected for delivery and to pay for it; wherefore they asserted the right to off-set plaintiff's demand for damages to the extent of $2,500.

Did plaintiff fail to accept and pay for the poplar at the time agreed on? Of the 250,000 feet of poplar he did receive 62,967 feet September 24, 1909, and 3,054 feet in February, 1910, and paid therefor. By letter of September 23, 1908, Wiggin wrote the Marsh Lumber Company of his information through his inspector Combs of its readiness to fill his orders, and instructed it to saw 50,000 feet of poplar one inch thick, adding: "However, I would like to have you tell me just what you would like to do with regard to the 500,000 feet contract, and then so far as I can without injury to myself I will conform to your desires". To this communication it did not respond. October 6, he again wrote: "Some little time ago I wrote you with reference to our contract, but have heard nothing from you. By the terms of the contract you were to furnish me 50,000 feet of whitewood by October 1. Kindly advise what you intend to do". To this letter the lumber company replied October 12, saying: "We have about 25 or 30 m. feet of it on sticks. * * * Will let you know when ready to ship." This exchange of communications, read in conjunction with the statements of J. H. Poteet as a witness for defendants that he did not deliver to Wiggin 50,000 feet of poplar in October, that what he did have was green and not dried as required, and that he did not deliver any poplar until August, 1909, renders obvious lack of merit in

the claim for recoupment for failure to accept any lumber of that character in that month.

Do defendants stand on a more secure basis as to other defenses stated in such notice? Their correspondence aids also in the solution of this inquiry. On December 28, 1908, following the letter of defendants dated October 12, plaintiff asked them to advise him by return mail how much stock they had sawn on the contract; to which, on January 1, 1909, they said: "There is something like 150,000 feet log run poplar cut, dry and ready to ship, but it is to be hauled to the railroad, and owing to the bad condition of the roads at this season of the year we would prefer leaving this stock off until spring, if it meets with your approval. As to the oak, we have·a sufficient amount to fill the requirements of the contract; and as to the chestnut we are manufacturing this at this time, but do not have sufficient to make note of. Will venture to say that we will have the entire amount out by March first". In reply, Wiggin wrote on January 4, 1909, directing defendants to haul the poplar immediately. He also stated, "You may also haul the oak if you want to". To this letter the record discloses no reply.

Wiggin wrote again January 22: "What about hauling the poplar that I wrote you about the other day to the railroad? You have not advised me whether I could count on it or not. Please let me know". Not having a reply, he wrote again on April 14, asking defendants how they were getting along on the contract and if they could furnish three cars of oak lumber of specified dimensions. On April 17, J. H. Poteet replied: "We can furnish you 4-4 oak at any time and will soon be ready to load 4-4 poplar, and will cut the 5-4 1 and 2 oak at once. On April 21, Wiggin wrote, advising defendants that Combs had shipping orders for the oak ready, and directing two cars of the 5-4 oak to be sawn "at once". He asked, "How long before you will be able to get your stock to the railroad"? On April 26, he again wrote: "Please send me a schedule of what lumber you have on sticks for me, and let me know how soon it will be in condition for shipment and about how it will grade". Defendants replied on April 30, that they then had ready to ship two cars of 4-4 oak, one car of 6-4 chestnut, and 150,000 feet of

poplar, but stated that the oak and chestnut was still at the mill. The letter further stated: "Send orders for 1 car No. 2 com. 4-4 oak, 1 car common and better, 1 car 6-4 S W and better chestnut, and by that time can commence on poplar. Have plenty of oak and chestnut cut to fill contract I think, 1 car 8-4 log run chestnut fifty per cent common and better. This is almost ready to ship. I want to complete contract this year". June 16, Wiggon wrote, advising defendants of his orders through his inspector Combs for certain quantities of chestnut, and saying: "Let me know what you have left in chestnut from your list of June 8th, and I will send you a shipping order to take it up". June 28, defendants wired Wiggin, "Send orders for four quarter poplar all grades". June 29, Wiggin replied to this telegram by letter, stating that he could not determine from it how many cars it had ready for shipment, and asking for specific information as to the amount and an estimate of how it would grade, upon receipt of which shipping orders would be furnished. July 14, Wiggin wrote the defendant company that he had sent Combs shipping orders for three cars of one inch poplar. On September 14, he wrote the company: "With regard to poplar, there is no reason why Mr. Combs has not been moving this stock, as he has had shipping orders for a part of it". On September 24, J. H. Poteet wrote Wiggin: "I sent you a small list of lumber I have ready to load at Surveyor; hope will soon have all the balance ready by Christmas".

September 30, Wiggin wrote Marsh Lumber Company: "I do not understand just what you have left for stock ready for shipment. So far as I can discover I have taken pretty nearly everything that you have had ready. Kindly advise me by return mail what you have now ready for shipment". November 17, he wrote: "Please advise what you have ready for shipment in car load lots, and I will immediately send shipping orders for same".

March 10, 1910, Wiggin wrote: "What have you that is now ready for shipment? Please let me know about this by return mail. I think I have been very lenient with you on this contract, and I need the lumber now. I regret to say that I am compelled to insist that all the lumber on this contract must be furnished by you within the next three months".

March 28, Marsh Lumber Company replied: "We can get out all the oak and chestnut in three months, but can not possibly get out the poplar in that time". May 10, 1910, Wiggin wrote the company: "Will you please advise by return mail what you have at the railroad ready for shipment, and also what you have at the mills applicable to our contract and how long before it will be in shipping condition. Please let me know about this by return mail, so that I may know what stock to count on as coming from you during the next few months". And on July 16, 1910: "I am getting tired of waiting for the stock that you are to furnish me under contract. I have asked you repeatedly to let me know when you would furnish this stock, and have had no answers, and I must now say that except you furnish me with some stock right away I shall go out into the open market and buy, charging any difference in price to your account. I do not intend to fool along any longer. Let me know by return mail what you will do".

Except evasively, no witness contradicts the continuous and persistent demands made by the letters written by plaintiff. They demand compliance, and no answer shows performance by defendants, or a reasonable effort on their part to comply. On the contrary, there appears a disposition to avoid any attempt to furnish the lumber sold, except when and as convenient to them.

Nor does any proof establish the claim of credit for injury caused to lumber stacked ready for delivery to plaintiff at Surveyor. Indeed, the quantity so ricked is not definitely shown by any testimony. The estimates are admittedly indefinite and uncertain. The proof as regards damages to the lumber is more vague and inexact. Of the quantity J. H. Poteet said there was something like 50,000 feet, and of the damage done he said, "Well, I couldn't intelligently answer that, for how much, but it naturally deteriorates. I couldn't tell just what per cent". Though more definite as to quantity, Hendricks fixed no definite basis for estimating the damage occasioned to the lumber. He said it was damaged "to a certain extent". On him who claims damages rests the burden of proof. This obligation defendants failed to meet. Where provable, as here it is, the quantum must not be left

to mere conjecture. *Specialty Co.* v. *Wood Co.* 47 Minn. 393; *Barngrove* v. *Maack,* 46 Mo. App. 408; *Parks* v. *Frank,* 75 Cal. 364.

Defendants likewise charge dereliction on plaintiff's part to cause an inspection of the lumber at their mill yards. The contract is silent as to the place where the survey shall be had. In such case, the place of delivery ordinarily is the place of inspection. 35 Cyc. 226. Besides, by submitting without complaint to inspection at Surveyor of all the lumber shipped, defendants have interpreted the contract as requiring the inspection at that point. Whether Wiggin gave defendants shipping orders for the 150,000 feet of poplar in April, 1909 (they contending that he did not), or directed it to be inspected at that time, was wholly immaterial on the question whether or not he violated the terms of the contract. If hauled, as required, and not removed within a reasonable time, the failure may have afforded a just basis for default imputed to him. The contract permitted plaintiff to order the lumber at any time within the one year from July 11, 1908, and required defendants to deliver it when so ordered. That was their undertaking. If complied with, Wiggin was bound to take and pay for it. His non-compliance would have breached the contract and excused defendants from further execution of it. They would then have been warranted in insisting upon such non-performance as a breach. But they did not haul it, as so ordered, and not at all, or make any effort so to do, until in April, 1909, when according to the testimony they "commenced" to haul it. During the spring of that year, it appears, some "fifty or sixty" thousand feet of all the three varieties of chestnut, oak and poplar were delivered at Surveyor, as agreed; but no proof shows when they completed the work, nor whether they hauled all the lumber. However, it is clear that a large portion of it was permitted to remain stacked for a considerable length of time at the end of defendants' tram road, about a quarter of a mile from Surveyor.

Which of the parties was required to secure cars for the carriage of the lumber purchased? Much is said in argument on this phase of the case, on the theory that as plaintiff did not furnish the cars and designate the carrier he thereby

excused defendants' failure to comply with the requirement as to delivery. This we think is a *non sequitur,* a conclusion not warranted by the facts. The duty of securing cars, selecting the carrier, and giving shipping instructions devolved on the plaintiff. 35 Cyc. 250. Without performance of these duties, defendants of course could not be required to load the lumber. But the failure to make any one or more of the requisite selections did not exonerate them from compliance with the express requirement as to delivery at the time and place specified by the contract, when so ordered. Until assembled in obedience to demand, why should plaintiff make any effort to secure cars, elect the carrier or give the destination of the desired shipments? He had a reasonable time after delivery and inspection to exercise the privileges accorded him by the agreement. Haulage in car load lots, consisting of from ten to twenty thousand feet, from mills three to four miles distant, necessarily would allow ample opportunity to obtain cars, select the road and impart information of the destination. Being in default thereunder, defendants consistently can not complain of plaintiff's dereliction in the specified particulars. They were not in a position to impute breach to him in these respects.

To the contention that Combs, plaintiff's inspector, now deceased, informed defendants in April, 1909, he did not have shipping orders, a statement relied on by them to illustrate plaintiff's attitude towards the fulfillment of the contract, what has just been said applies with equal force. The lumber referred to in the conversations detailed was not then delivered at Surveyor, except, as Hendricks says, ''some fifty or sixty thousand feet'' of all varieties. Where the remainder of it was the evidence does not definitely show, nor that it was in condition for delivery under the contract requirements. If it was that sawed by Davis, who heard Combs' statement on one occasion, it was seven or more miles from the place of delivery. Davis was then demanding payment for the sawing done by him, and presumably to that lumber Combs referred. The time, place and circumstances of the other statements attributed to him, and the location of the lumber therein mentioned, no proof advises us, except as to the 50,000 or 60,000 feet in the yards at Surveyor and 100,000 feet at the

end of the tram road. When the testimony was given Combs was dead, and he did not, nor did any witness, testify that plaintiff knew where that or any other such lumber was, whether at Surveyor or elsewhere, or whether it was in the condition required for delivery thereat.

But, conceding breach by both parties and a subsequent effort by both to fulfill their contract stipulations, can plaintiff recover the damages specified as liquidated, or any damages based upon proof independent of the sum so specified? First, it may be observed that defendants' contention that the five dollars for each one thousand feet of deficiency in the prescribed quantity as the damages agreed on in case of their failure in delivery is a penalty, and hence not recoverable, obviously lacks merit. The contract definitely declares the purpose and intent of the parties. On that point it is clear and specific. *Lumber Co.* v. *Friedman,* 64 W. Va. 151; *Beury* v. *Fay,* 73 W. Va. 461; *Lumber Co.* v. *Fields,* 102 Va. 1; *Crawford* v. *Heatwole,* 110 Va. 358; 13 Cyc. 90.

Plaintiff and defendants alike dealt with each other under the terms of the contract between them as a continuing one, until July 16, 1910, when, by letter of that date, Wiggin informed them that unless he received ''some stock right away'' he would buy it ''in the open market'' and charge the difference to them, adding, ''I do not intend to fool along any longer''. Prior thereto, J. H. Poteet, for defendants, wrote Wiggin, ''I am going to let you have lumber any way whether we have a contract or not'', and after this action was brought the company continued to make shipments under the terms of the agreement between them. Thereby, both waived the limitation on deliveries.

When ''the party not in default has the right of election between treating breach by the party in default as a discharge of the contract, or treating the contract in full force and effect, he may, if he choose, take the latter alternative. Such election waives his right to treat the contract as discharged.'' 3 Paige on Contracts 2303. But such waiver as to time does not preclude either party from demand and recovery of the other compensation in damages, whether liquidated or unliquidated. *Lumber Co.* v. *Friedman, supra;* *Gallagher* v. *Railroad Co.,* 13 N. Y. St. 80. Extension of time

for performance leaves unimpaired other stpulations of the contract. *Nibbe* v. *Brauhn,* 24 Ill. 268. See also *Railroad Co.* v. *Woodworth,* 26 Fla. 368; *McIntire* v. *Barnes,* 4 Col. 285; *Cannon* v. *Wildman,* 28 Conn. 472. Permissive delays in compliance by the party not in default do not estop him from recovery for delinquency in the execution of the agreement. *Smith* v. *Sanitary District,* 108 Ill. App. 69; Lawson on Contracts §455. "A breach of contract may be waived by the party entitled to raise the question, and where this is done the breach does not operate as a discharge. * * * The waiver estops the party not in default from claiming that the contract is ended, but it does not prevent a recovery of damages for defective work, unless the right is lost by the conduct of the party not in default". 3 Elliott on Contracts §2050.

In what respect, if at all, did the rulings upon the trial of this case accord with the principles herein stated? While rejection of the testimony sought to be elicited by questions propounded by plaintiff to J. H. and Ella S. Poteet, and to plaintiff as a witness in his own behalf, objections to which were sustained, was not erroneous to the extent warranting reversal for that cause only, we think the testimony was admissible; not on the theory, however, of immunity from damages for plaintiff's breach of the contract, if indeed he did breach it, but upon the question whether he did fail or refuse to perform his part of the agreement. In other words, the testimony was relevant to the inquiry as to whether he was chargeable with the breach imputed to him, and, if so, as to whether defendants did not waive the breach.

The first and fifth instructions given for plaintiff accord with what has been said herein. Numbers 2, 3 and 4, given for him, are correct only in view of the insufficiency of the testimony introduced by defendants to sustain the off-sets claimed by them against damages sought to be recovered in this action. They were binding instructions, and ignored such testimony. In our view of the case, however, the ruling thereon does not constitute prejudicial error. A binding instruction should always comprehend all the facts proved in the case in which it is given. The others were unobjectionable. The two not given for plaintiff were properly refused; the

first, in so far as it imposed on defendants the duty of providing cars for the shipments of the timber. That duty devolved on plaintiff. The second, because it conflicts with the principles stated in this opinion. The language of the instruction given for defendants is such that it might tend to mislead. It told the jury that if defendants loaded all the lumber they were directed to place on the cars they should find for defendants. The inquiry was not solely whether defendants loaded the cars, but whether they delivered the lumber at Surveyor as directed by plaintiff and loaded it thereon pursuant to such directions.

The last assignment challenges the propriety of the ruling upon the motion to award a new trial. Plaintiff claimed $1703.13. The jury found a verdict in his favor for $117.30. Under the evidence adduced upon the trial and certified here, he clearly was entitled to more than that amount. Upon what it was based we fail to apprehend. The finding is against the manifest preponderance of the evidence, and hence plainly wrong. Under the proof, it ought to have been for a larger sum. The jury must have misconstrued or misconceived the testimony. Their verdict is contrary to the instructions given, though defendants' instruction may have misled them. But, whatever the inducement, we feel constrained to reverse the judgment, set aside the verdict, and award a new trial; and such will be the order entered here.

*Reversed, and new trial awarded.*