THE CHARLESTON NATIONAL BANK OF CHARLESTON, WEST VIRGINIA, A NATIONAL BANKING ASSOCIATION, *Executor and Trustee of the Estate of* B. E. FISHER, *Deceased*

*v.*

EDGAR B. SIMS, *Auditor of the State of West Virginia*

(No. 10468)

Submitted April 8, 1952. Decided May 27, 1952.

Fox, JUDGE, not participating.

*Philip H. Hill, Charles Ritchie,* for relator.

*Chauncey Browning,* Attorney General, *W. Bryan Spillers,* Assistant Attorney General, for respondent.

LOVINS, JUDGE:

By this original proceeding, the Charleston National Bank, Executor and Trustee of the Estate of B. E. Fisher, deceased, relator, seeks a writ of mandamus to compel Edgar B. Sims, State Auditor, respondent, to pay the claim of B. E. Fisher, deceased, against the State Board of Control, in the amount of $2,759.43, the aggregate of an alleged balance due for work performed by decedent under contract and compensation for additional services performed and materials furnished. An award has been heretofore recommended by the State Court of Claims, after a hearing held during the lifetime of decedent. The above amount of $2,759.43 was appropriated by the Legislature for payment of the claim, Chapter 8, Title 2, Section 4, Acts of the Legislature, Regular Session, 1951, and the claim was declared to be a moral obligation of the State. Chapter 28, *idem.*

The respondent has refused to pay the requisition of the State Board of Control, hereinafter referred to as "board," contending that such payment would be a gift of public funds in contravention of Article X, Section 6 of the State Constitution. He bases that contention on the grounds that decedent failed to complete his performance of the contract within the time specified; that there was an incomplete and faulty performance by him; that payment of a substantial portion of the contract, made prior to the above award, adequately compensated decedent; and that the State has suffered a loss of $1,535.75, caused by the alleged breach and the necessity of completing the work contemplated by the contract.

The proceeding is considered here upon the petition, the answer of respondent, and a record of the hearing held by the Court of Claims. A stipulation of the parties has made a transcript of the evidence taken at that hearing a part of the record in the present proceeding.

On October 31, 1947, relator's decedent was engaged by

the board to move six buildings from Point Pleasant, West Virginia, to Lakin, West Virginia, the site of Lakin State Hospital. A written contract was entered into, in the form of a letter from decedent to the board, wherein the decedent agreed to move the buildings for the sum of $12,-434.25. Work was to commence on November 5, 1947, and was to be completed "on or by November 30, 1947. Unless the required materials cannot be purchased immediately." The decedent undertook to "move and place building on foundation with concrete floors similar to floors at present location. Install plaster board on exterior walls and ceilings, paint inside and outside two coats. Sewer, water, steam and electricity [*sic*] lines will be run to inside of buildings and connected to service all existing fixtures. Will change door openings into windows, replacing either windows and doors as required." The board agreed to furnish decedent with "as many as twelve prison laborers to dig ditches, footers, *ect.*, if needed."

The work was commenced immediately and within thirty days the buildings had been moved to the site at Lakin. Thereafter, work slowed to a virtual standstill and was far from finished on November 30, 1947, the date specified for completion. This period of inactivity extended through the following winter into the spring of 1948, and was attributed by decedent and his witnesses to bad weather, inability to obtain materials, and the failure of the board to furnish prison labor as required by the contract. Such testimony is refuted by the board's construction engineer, who stated that the weather was good until late February, 1948, and that he had found that on similar work undertaken by the board in the same area, during the same period, the weather was no obstacle to expeditious performance and there was no serious shortage of materials. The same witness further testified that prison laborers had been furnished decedent for a period of three weeks, but that such laborers had been withdrawn after the work to be done by them under the provisions of the contract had been completed, and after decedent had attempted to use them for other tasks. Witnesses for the board contended that at least part of the delay was

caused by the absence of decedent in Florida during the winter months, from December 10, 1947, to March 13, 1948. The decedent testified that he had left the work in charge of his foreman, who had authority to finish the project.

Decedent's witnesses testified that the work was completed in August, 1948, with the exception of the installation and painting of fifteen windows. Shortly thereafter, at the suggestion of the board, a statement was rendered by the decedent in the amount of $10,000.00, which was approximately eighty per cent of the contract price. A witness for the board testified that it was the policy of the board in such projects to pay that percentage upon apparent completion of the work and the balance after inspection by the board. Decedent was paid $10,000.00.

After an inspection of the work, the board notified decedent that it considered the contract breached by him, and that he had been adequately compensated for work performed.

Decedent's claim is for the balance of the contract price, $2,434.25, and compensation for extra services and materials, amounting to $1,075.18. Decedent asserted that he had expended $250.00 to complete ditch digging which the prison laborers were supposed to have done; that he had spent $500.00 for fill work in order to make possible the pouring of concrete for floors; and that he had performed some additional electrical work at the request of an employee of the Lakin hospital, for which he was entitled to $93.30. He also claimed payment for windows and window frames which he supplied in the amount of $231.88.

The board contends that decedent was not entitled to the additional compensation which he claims for extra services and materials; that all necessary digging of ditches and footers was done by prison labor; that the fill work done by decedent was within his commitments under the contract; that he was likewise obligated under the express contract to supply and install windows and window frames; and that the extra electrical service was not authorized.

An inspection of the work after decedent's alleged completion showed that the plumbing and electrical work, and the materials used therein, were defective. Steam pipes were laid without expansion joints and without return lines, and the outlets were placed without regard to future use of the buildings. Wiring was run only to the outside of the buildings and not connected with the internal fixtures. Painting, inside and out, was unsatisfactory. To remedy those defects, it was necessary for the board to expend an additional $3,970.00. Decedent's witnesses testified that the foregoing work was performed in accordance with the contract; that two coats of paint had been applied to the buildings but that chemical disintegration of the wood prevented satisfactory results; that, as required by the terms of the contract, the electrical and plumbing work was done with materials salvaged from the buildings at their former location; and that during the interval between the placing of the buildings on the new site at Lakin and the use of the materials, they had been stock-piled on the premises, and some of the materials had disappeared from the stock pile before they could be used.

Upon the foregoing record, the State Court of Claims found that decedent had fully performed the terms of the written agreement of October 31, 1947, and awarded him $2,434.25 as the unpaid balance due thereunder. The majority of the court further found that decedent was entitled to $1,075.18 for additional work performed and materials furnished, being the full amount of the extra compensation claimed by decedent, and, accordingly, made an award in that amount. One member of the court, however, would have allowed decedent only $325.18 for the extra services and materials. The Legislature at its 1951 session appropriated the sum of $2,759.43 to pay decedent's claim, and declared the claim to be a moral obligation of the State.

The issue in this proceeding is whether the facts presented by the record create a moral obligation of the State to pay the claim of the relator. Although the dec-

laration of the Legislature that relator's claim is a moral obligation is entitled to weight and serious consideration, a determination of that question is a judicial function, and the legislative declaration is not conclusive but is subject to investigation and determination by this court. *Price* v. *Sims*, 134 W. Va. 173, 58 S. E. 2d 657; *State ex rel. Adkins* v. *Sims*, 130 W. Va. 645, 46 S. E. 2d 81; *State ex rel. Davis Trust Co.* v. *Sims*, 130 W. Va. 645, 46 S. E. 2d 90; *State ex rel. Cashman* v. *Sims*, 130 W. Va. 430, 43 S. E. 2d 805.

A moral obligation has been declared to exist by this court in cases where the circumstances creating the obligation were contractual. In *Slack* v. *Jacobs*, 8 W. Va. 812, and *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, appropriations were upheld paying for benefits of a public nature received by the State under contract, the court holding that there was a moral obligation to pay a fair compensation for services rendered. In *Glover* v. *Sims*, 121 W. Va. 407, 3 S. E. 2d 612, it was held that there was a moral obligation of the State to pay for property from which the State had derived benefit.

A general rule to be applied in cases involving the question of moral obligation has been laid down in *State ex rel. Cashman* v. *Sims, supra*. The pertinent portion of that rule is as follows: "To constitute a valid declaration by the Legislature of the existence of a moral obligation of the State for the discharge of which there may be an appropriation of public funds in the interest of the public, it is necessary, as a general rule, that there be * * * an obligation or a duty, legal or equitable, not imposed by statute, but created by contract * * * which would be judicially recognized as legal or equitable in cases between private persons." The foregoing principle has become the settled law of this state. *Price* v. *Sims, supra*.

In announcing the general rule, the court asserted, as an exception to that rule, a situation where there is an obligation predicated upon simple right and justice "such as a fair and just man should assume in his own affairs even though not compelled by law so to do." *Cashman* v.

*Sims, supra.* Similar statements are contained in the opinions in *Slack* v. *Jacobs, supra,* and *Woodall* v. *Darst, supra.* Those cases indicate a possibility of recovery upon purely moral and equitable considerations, depending upon the facts and circumstances of each particular case.

In order to accomplish a recovery on the express contract in the instant proceeding, relator must show that its decedent fully complied with the terms of the contract. *Jones* v. *Kessler,* 98 W. Va. 1, 126 S. E. 344; *Johnson* v. *Hoffman,* 130 Va. 335, 107 S. E. 645; Am. Jur., Contracts, §328. See *Franklin* v. *Pence,* 128 W. Va. 353, 358, 36 S. E. 2d 505. "Where the plaintiff claims damages for the breach of a contract, it is necessary to a recovery that he show that he has complied with the contract himself, or that he has been prevented or relieved from compliance by act of defendant; and, if the evidence shows that he has not complied with the terms of the contract, and has not been prevented or relieved therefrom as aforesaid, he will be denied a recovery from the breach of same." *Jones* v. *Kessler, supra.*

It is not necessary to determine whether the non-compliance by decedent with the provision of the contract relative to the time within which the work was to have been completed was essential to full performance of the contract by decedent, because that breach, if it be termed such, was waived by the fact that the board subsequently treated the contract as still in force. *Wiggin* v. *Lumber Co.,* 77 W. Va. 7, 87 S. E. 194; *Box Company* v. *The Hub,* 89 W. Va. 101, 108 S. E. 601; *Cole* v. *Hines,* 81 Md. 476, 32A 196, 32 L. R. A. 455; 12 Am. Jur. Contracts, §349. We are concerned in this proceeding with the breaches, if any, occurring subsequent to the date specified in the contract for completion of the work.

We think the contract between the decedent and the board contemplated that the buildings would be placed in an inhabitable condition by decedent after being moved upon the premises at Lakin. At the time the decedent represented his work to be complete and finished, the

buildings were defective in the several particulars hereinabove described, necessitating the expenditure by the State of a sum in excess of the unpaid balance of the contract price to finish the buildings for occupancy. Decedent's performance of the terms of his contract with the board must be characterized as incomplete, faulty and a breach of the contract. No exculpatory matter was shown, and decedent is not entitled to full performance from the other party. The board was justified in refusing to pay the contract price.

Payment of $10,000.00 to decedent by the board discharged any obligation to compensate him for the benefit received by the board from the work actually performed. When a recovery is given for repudiation of a contract on the basis of the value of the benefit conferred by the partial performance of a party, the defendant in such an action is entitled to abate the recovery by the damages he has sustained on account of the lack of full performance by the plaintiff. 12 Am. Jur., Contracts, §346. We cannot conclude from the record in this case that a moral obligation of the State exists to pay the unpaid balance of the compensation specified by the contract for the work undertaken by decedent.

Nor do the facts and circumstances create a moral obligation to pay for those services and materials for which relator claims additional compensation. The express contract contemplated the furnishing, as well as the installation, of window and window frames. It is established that the ditch digging was done by prison labor or prison labor was available for such work. The fill work, which had to be done prior to the pouring of concrete, was a foreseeable necessity and was a normal part of the work which decedent obligated himself to do under the contract. It is not shown that decedent was entitled to additional compensation for the extra electrical service which the electrician testified he performed at the request of an employee of the Lakin hospital.

Any payment of State funds on the basis of the facts

and circumstances disclosed by the record in this proceeding would be contrary to the prohibition contained in Section 6 of Article X of the State Constitution.

For the foregoing reasons, we hold that part of Chapter 28, Acts of the Legislature, 1951, Regular Session, which declares the claim of relator to be a moral obligation of the State and directs payment thereof, and that part of Chapter 8, Title 2, Section 4, Acts of the Legislature, 1951, Regular Session, which appropriates money for the payment of relator's claim unconstitutional, null and void.

The writ of mandamus prayed for is denied.

*Writ denied.*