# CHARLESTON.

C. A. HOLDERBY *et als. v.* HARVEY C. TAYLOR COMPANY *et als.*

Submitted October 5, 1920.   Decided October 12, 1920.

1. CONTRACT—*Rescission of Partially Executed Contract is Permitted Only After a Breach Defeating its Object.*

   Rescission of a partially executed contract is not permitted for a casual, technical, or unimportant breach or failure of performance, but only for a breach so substantial as to tend to defeat the very object of the contract. (p. 171).

2. SAME—*Rescission of Executory Contract Cannot be Had, Where it is Impossible to Restore the Status Quo.*

   Rescission of an executory contract will not be granted where it is impossible to restore the *status quo.* If the situation of the parties has been so changed, by part performance of the contract, or by their making arrangements for carrying it out, or by their actions taken in reliance upon its expected execution, that they cannot be restored, without loss, to their former situation, as if the contract had not been made, a rescission will not be allowed. (p. 171).

3.   SAME—*No Rescission of Executory Contract by Party Who Has Waived Performance of Breaches Relied on.*

Rescission of an executory contract will not be granted to a party who has with full knowledge acquiesced in the breaches relied upon for rescission for such time as to indicate a waiver of their performance. (p. 172).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, Cabell County.

Suit for injunction and other relief by C. A. Holderby and others against the Harvey C. Taylor Company and others. Decree for defendants, dissolving a prior temporary injunction, and plaintiffs appeal.

*Affirmed.*

*H. H. Darnall, Holt, Duncan & Holt* and *Geo. J. McComas,* for appellants.

*Fitzpatrick, Campbell, Brown & Davis, Williams, Scott & Lovett* and *Livezey & Irons,* for appellees.

RITZ, JUDGE:

On the 15th of March, 1915, the plaintiff C. A. Holderby, being the owner of a tract of land containing about 207 acres, situate in or near the city of Huntington, entered into a contract with the defendant Harvey C. Taylor Co., a corporation, having for its purpose the sale of this land. It appears that there is about 105 acres of the land which is designated as hill land, and the residue is divided into two tracts, one situate west of Sixteenth street, and one east of Sixteenth street, that west of Sixteenth street being closest to the inhabited part of the city, and so lying as to make it comparatively easy to put it upon the market as city lots, while that part of the land, exclusive of the hill land, which lies east of Sixteenth street was at the time partly covered by a lease to a brick company, and is also more remote from the inhabited part of the city, by both of which causes its marketability at the time of the making of the contract was somewhat affected. The contract provides, among other things, that the Taylor Company shall as expeditiously as possible have the land, or such portion thereof as is deemed advisable, laid out into lots, streets and alleys, but

with the provision that all of that portion of the property exclusive of the hill land is to be so laid out immediately, and do whatever else it considered advisable to render the said premises attractive and saleable. There is a provision then for the terms upon which sales shall be made, which it is unnecessary to incorporate at length, inasmuch as it is not here involved. It is further provided that the property shall be sold at such prices as will enable the said C. A. Holderby to realize therefrom at least the sum of $150,000.00 in money or deferred purchase money notes, and that when said land is laid out into lots the Taylor Company shall furnish a blue print thereof to the owner, showing the location of the lots, streets and alleys thereon, and the prices at which such lots are to be offered for sale, for approval, and that no sales shall be made at a less price than is thus stipulated. It is further provided that the Taylor Company shall retain fifty per cent. of the cash payment received for any of such lots, and fifty per cent. of the amount received from any of the deferred purchase money notes until such fifty per cent. shall equal twenty-five per cent. of the sale price, and that the other seventy-five per cent. of such sale price, either in money or in notes, shall be paid over to the owner. The Taylor Company also agreed to furnish statements each month during the life of the contract showing the property sold during the preceding month, together with the names of purchasers, and the prices obtained, the amount of the cash payment and the manner of settlement of the deferred payments, and to pay to the owner each month such monies as might be collected by it, to which she is entitled under the contract. It is provided that the owner of the property shall pay all taxes upon the same, and discharge any liens that may be thereon. The contract by its terms is to run for the period of 15 years from the first day of July, 1915, unless sooner terminated by agreement of the parties, and if the property is all sold within the said 15 years, then the contract is to continue in force until all of the notes taken for deferred purchase money have been collected; but should all of said property not be sold in said term of 15 years, and the owner thereof shall have received under the contract the sum of $150,000.00

in money and good notes, then, at the option of the Taylor Company, the contract shall be extended for an additional term of ten years. The Taylor Company further undertook to sell sufficient of said lots each year to net to the owner at least the sum of ten thousand dollars, and should it sell more than sufficient to net to the owner this amount in any year, any surplus may be taken to make up the minimum in any subsequent year. The contract provides that the owner shall immediately thereafter convey said property to a convenient trustee, who shall have the power to carry out on the part of the owner the terms of the contract by making conveyances, receiving the reports and money on behalf of such owner, and doing the other things required to be done by her. There are many other provisions of the contract, but those above stated are all that are involved in this controversy.

Pursuant to the agreement the owner did convey the property to a trustee, who was authorized to make deeds for lots as the same were sold by the Taylor Company, to receive money and receipt for the same, to receive the reports from the Taylor Company, to receive and approve the maps showing the layout of the property, and the prices to be charged for the lots.

Immediately upon entering into this contract the Taylor Company laid off into lots, streets and alleys, that part of the land lying west of Sixteenth street, and placed the same upon the market, and has been making sales of the lots so laid off until at the time this suit was instituted it had sold therefrom lots at the price of $123,648.87, which have been conveyed to the purchasers, and had made sales of other lots amounting to the sum of $7,250.00, which have not been conveyed because of the injunction granted in this suit, and had remaining of the lots lying west of Sixteenth street sufficient at the price at which they were placed upon the market to realize the sum of $47,100.00, or a total of $178,000.00 to be realized from the property lying west of Sixteenth street, the minimum for which the same was to be sold, in accordance with the contract, being the sum of $100,000.00. It appears that the Taylor Company made reports regularly to the trustee above mentioned, as provided by the contract, showing the lots sold, by their numbers,

to whom they were sold, and the amounts for which the same were sold, and also made reports of collections made by it showing from whom such collections were made, and the amounts thereof, and remitted to the trustee the amounts to which the owner was entitled according to its contention, that is, it retained fifty per cent. of the purchase price until it had received an amount equal to twenty-five per cent. thereof, after which time collections for each particular lot was remitted to the trustee. At the time of the institution of this suit in November, 1919, that part of the land lying east of Sixteenth street, exclusive of the hill land, had not been entirely laid off into lots, streets and alleys. It appears that about ten acres of this land lies on either side of what is known as the Boulevard, which the Taylor Company succeeded in having extended to the property. This ten acres was laid off into nine home sites, and a plat made thereof, and submitted to the trustee for approval, together with the price at which it was proposed to sell these home sites, to-wit, $2000.00 each. It seems that this plat also included a layout of the hill land with the idea of putting it on the market as villa or home sites. The trustee, as he was authorized to do, approved this plat or plan of the Taylor Company, and the defendant thereupon made sale of the nine home sites to the defendants Azel Meadows, M. Broh and Dave Gideon, for the sum of $18,000.00, and prepared deeds conveying the same to them, in which deeds, however, the land was described as an entirety, and as containing so many acres without reference to the map or plat upon which the same was laid out. Since the making of the contract involved in this case the plaintiff C. A. Holderby conveyed a one-fourth interest in the land to each of her three daughters, to-wit, the plaintiffs L. R. Nelson, Sadie H. Solter and Anna H. Darnall, who unite with the said C. A. Holderby in bringing this suit for the purpose of having cancellation of the contract made with the Harvey C. Taylor Company because of alleged failures upon its part to observe the terms thereof, and to enjoin it from making any further sales of said lots, and to enjoin the trustee from conveying any of said lots at the request of the said Taylor Company to purchasers secured by it. A temporary

injunction was granted which upon motion was subsequently dissolved, and it is from the decree dissolving that injunction that this appeal is prosecuted.

The plaintiffs allege as breaches on the part 'of the Taylor Company justifying the rescission of the contract: first, that it failed to cut up into lots, streets and alleys, and render saleable that portion of the land lying east of Sixteenth street, exclusive of the hill land; second, that the Taylor Company, in making sale of the lands lying west of Sixteenth street, did not improve the streets or lay sidewalks, but simply laid off the same upon the ground by ploughing furrows, and put the same upon the market, and has retained and claims for its expenses and services in laying off this land and marketing the same twenty-five per. cent. of the amount of the sales, when in fact it is only entitled to retain the amount actually expended by it, and is to receive nothing for its services until the owners have received the sum of $150,000.00 net; third, that the sales proposed to be made by the Taylor Company to the defendants Meadows, Broh and Gideon, above referred to, are sales by the acre, and this contract contemplates the cutting up of said land into lots, and the sale of the same as city property; fourth, that the sale of these parcels to the said Meadows, Broh and Gideon will cut off from the boulevard the residue of the tract lying east of Sixteenth street, and make it less saleable, and less valuable; and fifth, that the Taylor Company assigned the benefit of its contract to the defendant G. D. Miller, in violation of its terms, the said contract contemplating the performance of the duties to be performed by the Taylor Company by it personally.

There is no doubt but that an executory contract may be rescinded for a failure of performance. If the default upon the one hand is of such character as to indicate that the party so in default does not intend to carry out the contract, he will be taken to have abandoned it, and the other party will be justified in rescinding the contract. In order to justify such rescission, however, the situation must be such as that the parties may be placed in *statu quo,* or practically so, and the breaches of the contract which are relied upon for rescission

must not have been acquiesced in to such an extent as that a waiver will be presumed therefrom. Rescission is a creature of equity, and will not be granted where to do so would produce an unjust result. It is the reverse of specific performance. It is not permitted for a casual, technical or unimportant breach or failure of performance, but only for a breach so substantial as to tend to defeat the very object of the contract, and in practically all cases of rescission it is held that restoration of *the status quo* is an essential prerequisite to the right to rescind. If the situation of the parties has been so changed, by a partial performance of the contract, or by their making arrangements for carrying it out, or by their actions taken in reliance upon its expected execution, that they cannot be restored, without loss, to their former situation, as if the contract had not been made, a rescission cannot be had. 1 Black on Rescission and Cancellation, § 1971; 3 Elliott on Contracts, § 2421; 6 R. C. L., title "Contracts" § 310. The doctrine of these texts is fully supported by the authorities there cited.

Keeping in mind these rules, let us see whether the plaintiffs are entitled to rescind the contract for any or all of the reasons set up by them. Their first ground, as before stated, is the failure of the Taylor Company to lay off and put upon the market the land lying east of Sixteenth street, as provided in the first clause of the contract. Four years of the time had passed when this suit was brought, and this land had not then been entirely laid off into lots and placed upon the market. The defendant Taylor Company says that the reason it was not so laid off and placed upon the market is, because of its location there was no real demand for it, and that to lay it off and place it upon the market would have had a tendency to reduce the price generally of said lots, and result in a disadvantage to all of the parties, instead of an advantage. It says further that because of the lease which was on part of this land it could not lay the same off advantageously until the expiration thereof, and further that the plaintiff C. A. Holderby requested it not to lay this tract of land off into lots, suggesting that it would sell better, because of the character of the soil, to a brick or tile manufacturing concern, and further that if it was laid off into

lots her taxes would be increased, and she did not care to have this done until there was a real demand for the lots. She does not deny that she made this request, nor does she attempt to show that during these four years she ever demanded of the Taylor Company that they proceed with the sale of this tract of land as lots. She knew the same had not been laid off; she knew that they were making sales of the other property more rapidly than the parties seem to have contemplated at the time they made the contract, and she made no objection whatever to the course being pursued by the Taylor Company. Her request of the Taylor Company not to lay off the land into lots because it would increase her taxes, and because it might sell to better advantage to a brick or tile concern, was sufficient excuse for its nonaction, but even if this excuse did not exist, her failure to object to the course being pursued by the Taylor Company during the four years it was actively engaged in selling her property will be treated as a waiver of any provision of the contract requiring more of the property to be laid off into lots than was actually so laid off.

The second ground, to-wit, that the Taylor Company, in making sale of the land west of Sixteenth street, did not improve the same by laying sidewalks, paving the streets and having trees planted, but put the same upon the market after only the expenditure of a very small sum of money, and is now retaining for itself twenty-five per cent. of the purchase price of the lots, is scarcely more tenable as a ground for rescinding the contract. Whether the contract required the Taylor Company to pave the streets, lay sidewalks and plant trees, and otherwise beautify this land before putting it on the market, we need not inquire. It sufficiently appears from the record that it laid the same off into lots, streets and alleys, and submitted a map thereof to the trustee, and had his approval of the same, together with the price at which said lots were to be offered before any of them were sold, and there is no suggestion that any lots were sold at a less price than was authorized. The course of conduct of the Taylor Company during the four years it has been making sales of these lots was fully known to the plaintiffs and their trustee, and there is not a suggestion that they ever

raised any objection to the method being pursued by the Taylor Company in performing this part of its contract until the institution of this suit. Such conduct constitutes a contemporaneous construction of the contract by the parties which has always been held to be entitled to peculiar weight. But certainly this alleged failure upon the part of the Taylor Company could never be held to be ground for rescinding the contract. That company has devoted four years of labor to the performance of this contract, and if the plaintiffs, as they now contend they have the right to do, are allowed to cancel the contract and compel the Taylor Company to account to them for every cent received by it except the amounts it actually expended in laying out the property, it would receive absolutely nothing for its four years of labor. This contention of the plaintiffs would produce a result so manifestly unjust and inequitable that it may be said that a court of equity is hardly the proper forum in which to make it. Whether the plaintiffs' contention that the Taylor Company is only entitled to receive the actual amount expended by it until the plaintiffs have been paid the sum of $150,000.00 net is correct or not, we need not inquire. The defendant Taylor Company contends that it is entitled to receive twenty-five per cent. upon all sales to reimburse it for its expenses and to pay it for its services. The court below has not yet passed upon that question. When it has decided as to the proper basis upon which the defendant Taylor Company shall be required to account, its decree will be subject to review.

The next contention made by the plaintiffs is that they are entitled to have the contract rescinded because the Taylor Company is attempting to sell part of said land as acreage, instead of as city lots, basing this contention upon the sales made to Meadows, Broh and Gideon of the nine home sites above referred to, which are treated in the deeds as two tracts of land, one lying on each side of the boulevard. Even if an attempt to sell part of the land as acreage would justify a rescission of the contract, the case made here fails to show that any such sales have been made or contemplated. As before stated, the Taylor Company cut these ten acres up into nine home

sites. This it clearly had a right to do under the terms of the contract. There is nothing in the contract that requires that the lots into which the land shall be laid out shall be of any particular size. Necessarily, because of the topographical conditions, the Taylor Company had to use its judgment in that regard. It laid out these ten acres and submitted its plan of the layout to the trustee, the party authorized to approve or disapprove the plan. This trustee approved the plan, as well as the price, and these sales were made in accordance with that approval. We are unable to say that there was the slightest breach of the contract in this transaction.

The plaintiffs further say that the defendant Taylor Company has broken the contract so as to justify rescission in attempting to convey these tracts of land to Meadows, Broh and Gideon, without providing for an outlet to the boulevard for the other land lying east of Sixteenth street. As before stated, the Taylor Company necessarily had to use its discretion in determining the manner of laying out this property into lots and putting it upon the market; and, subject to the approval of the trustee, its discretion was final, unless it acted fraudulently or in bad faith. The affidavits of many men familiar with the situation are taken and filed in this cause, and they show that the layout made by the defendant Taylor Company is the only practicable one that can be made. It clearly appears from the record that this plan is not the result of any fraudulent or capricious conduct upon the part of the Taylor Company, but is a practicable one, if not the only practicable one. There is no suggestion that the trustee acted fraudulently, and he with full information has approved the plan and approved the sales. The remaining lands lying east of Sixteenth street, it appears, will be reached by extensions of other streets and alleys of the city.

The remaining contention of the plaintiffs is that the Taylor Company broke its contract so as to justify a rescission thereof by making an assignment thereof to the defendant G. D. Miller. It appears that in order to secure the assistance of Miller in the carrying out of this contract the Taylor Company assigned the benefits of the contract to him with the provision that he

would receive fifteen per cent. of the twenty-five per cent. going to it from the sales of the lots, and it would receive the balance for making the sales. Under this arrangement the Taylor Company through its various agencies did the actual work of selling and marketing the property, and Miller furnished the money necessary for that purpose. It does not occur to us that this assignment to Miller, for his security, was any breach of the contract. The Taylor Company devoted its energies to carrying out the contract on its part, and the plaintiffs have had the benefit of its services. The results produced have been very much better then were required by the terms of the contract, indicating that the Taylor Company, instead of doing only what it was obliged to do by the terms of the contract, used its best efforts to make money out of the property for itself and its client as soon as it could be done.

We find no ground on which this contract can be rescinded at this time. The parties could not be placed in *status quo*. A rescission would result in the Taylor Company receiving nothing for its services under the contention of the plaintiffs, which services have inured to their benefit, and under its contention it would not receive what the contract contemplated as its compensation. The sales have already very nearly reached the amount which entitles the Taylor Company to receive increased commissions, and to deny it the benefit of this contract would be to confer upon the plaintiffs the uncompensated benefits of its services. Further than this, any breaches of the contract which may be considered at all of a substantial nature have been waived and acquiesced in by the plaintiffs, and they will not now be permitted to have a rescission of the contract for causes which have existed during the whole time of its performance, and of which they never made any objection.

The decree of the circuit court dissolving the injunction is clearly right, and the same is affirmed.

*Affirmed.*