# Wytheville.

## · A. N. JOHNSON V. T. S. HOFFMAN.

### June 16, 1921.

1. SALES—*Cattle—Reliance on Representations—Warranty—Case at Bar.*—In the instant case the buyer of cattle examined the cattle from which the 100 embraced in his contract were to be taken, before entering into the contract, for the purpose of satisfying himself as to their quality, and expressed himself as satisfied with the quality of the herds of cattle from which those embraced in the contract were to be subsequently taken.

   · *Held:* That this concluded against the buyer any claim that there was in the contract any express or implied warranty as to the quality of the cattle.

2. SALES—*Cattle—Weight—Case at Bar.*—A contract for the sale of 199 head of cattle provided that the cattle were to weigh from 1,000 to 1,200 pounds.

   *Held:* That under the contract the seller could not require the buyer to accept delivery of any cattle under the weight of 1,000 pounds, notwithstanding that the average weight of the cattle offered for delivery was nearly 1,000 pounds, as the contract did not provide for average weight, but that the minimum weight of each head should be 1,000 pounds.

3. SALES—*Performance—Quantity.*—At law a contract of sale is not regarded as performed by the seller, except by the delivery or tender of the exact quantity called for by the contract.

4. CONTRACTS—*Action for Breach—Breach by Plaintiff.*—The rule is strict and inflexible that a plaintiff has no right of action for damages for breach of contract where he himself has breached the contract. He may, under certain circumstances, have such right of action where he has not performed the contract on his part, but that is only where the circumstances are such that, under the rules of law applicable, he is excused from such performance, so that his conduct cannot be regarded as a breach of the contract; and even then he has no such right of action, unless it appears from the evidence in the case that he was willing, and was either able, or would have been able, to fully

perform the contract on his part, but for his having been re-
lieved from that duty by the excusing circumstances.

Error to a judgment of the Circuit Court of Madison
county, in a proceeding by motion for a judgment for dam-
ages. Judgment for plaintiff. Defendant assigns error.

*Revised and dismissed.*

This is an action by notice of motion instituted by the
defendant in error (who will be hereinafter called plaintiff),
against the plaintiff in error and one James H. Fletcher,
seeking to recover of these two damages for the alleged
breach by them of a contract of purchase of cattle from the
plaintiff, such contract being alleged to have been entered
into by the two last-mentioned parties, jointly and severally.

The two defendants appeared separately and filed their
separate pleas of the general issue of non-assumpsit, to
which pleas the plaintiff replied generally.

There was a trial by jury which resulted in a verdict in
favor of the plaintiff against the defendant Johnson, and a
verdict in favor of the defendant Fletcher. Whereupon the
defendant Johnson moved the court to set aside the verdict
as contrary to the law and the evidence. This motion the
court overruled, entered judgment in accordance with the
verdict and the defendant Johnson brings error.

There were other issues in the case, both in the trial
court and on this appeal, but in view of the conclusion
reached in the opinion of the court they have become im-
material and hence are not stated.

The material facts and circumstances of the case are as
follows:

The contract in suit was verbal. According to the
evidence for the plaintiff, which consisted chiefly of his own

testimony, the plaintiff and the defendant Johnson, at Orange March court (the 4th Monday in March), 1919, had some talk about cattle which the plaintiff owned. In this talk plaintiff mentioned that he had a number of cattle which he was feeding and having fed. Johnson said that he had a place where he could put some good, heavy cattle, stating that he could sell them to Fletcher (afterwards made one of the defendants in this case as aforesaid), and that he, Johnson, would like to get 100 good cattle, and asked the plaintiff whether he could furnish such cattle. The plaintiff thereupon said that he could furnish 100 cattle weighing 1000 to 1200 pounds, and after some "dickering" on the price per pound he offered to furnish Johnson three-year-old cattle for eleven and three-fourths cents per pound —such cattle to weigh from 1,000 to 1,200 pounds, to be weighed and delivered October 1, 1919, fifty-nine at his home in Madison county and forty-one at Etlan, in Madison county. This offer contained no statement as to quality, and it was not then accepted by Johnson and no contract of sale was then entered into; but Johnson said that he would take a look at the cattle in a few days. Accordingly, about a week or ten days later, Johnson, accompanied by Fletcher, came to plaintiff's home in Madison county and plaintiff "showed them fifteen cattle in one bunch at Collins,' and another bunch of about twenty at Kirtleys' and stated that there were five at Seville's." Fletcher asked what sort of cattle the last-named five were, and the plaintiff replied that "they were as good, if not better, than those they had just looked at." Plaintiff told Johnson and Fletcher that they could see the rest of the cattle at Blankenbaker's. Johnson and Fletcher went to Blankenbaker's, unaccompanied by the plaintiff, and there saw a large herd of cattle belonging to plaintiff, the precise number of such cattle not being disclosed by the evidence in the record. According to testimony for the defendants, however, which is not contradicted by the testimony for the plaintiff, the

43

cattle at Blankenbaker's consisted at that time of a "mixed bunch of cattle weighing three or four .cwt. to 1,100 pounds and composed of little cattle and heifers, etc." It is stated in the brief for the plaintiff that such cattle were sixty in number. The record does not disclose the size of the aforesaid cattle at Collins', Kirtleys' or Seville's at the time they were examined by Johnson and Fletcher as aforesaid.

The testimony on the subject is such, both for the defendants and the plaintiff, that the jury were warranted in drawing the inference that the examination of the cattle above mentioned on the part of Johnson was to satisfy himself on the subject of the quality of the cattle; but not upon the subject of what their weight would be on October 1, 1919.

According to the testimony of the plaintiff, about a week after the visit to his home aforesaid, "Johnson came back alone and said, 'If you will throw out the Holstein steer in the Blankenship bunch, we will take the cattle'," and the plaintiff said, "all right" and "considered that he had sold the cattle."

The testimony for Fletcher showed very clearly that his subsequent connection with the case was merely that of an independent purchaser of cattle from Johnson and that he was acting in that relationship for himself and incidentally for Johnson in trying to obtain delivery of the cattle which he understood Johnson had bought of the plaintiff. After this situation of fact was developed by the testimony for Fletcher the plaintiff in his testimony no longer controverted it, and indeed practically admitted that he had been mistaken in his previous impression to the contrary.

After all of the testimony for the defendants had been introduced, the plaintiff, on being recalled to the stand as a witness, said:

"Under my contract with Johnson the cattle were to weigh from 1000 to 1200—told him the 100 cattle were to weigh from 1000 to 1200 pounds."

The testimony for the defendant, Johnson, was to the effect that the contract was made and concluded at Orange, on the March court day aforesaid, and was for the sale by the plaintiff to Johnson of 100 picked cattle—fifty to weigh from 1000 to 1100, and fifty from 1100 to 1200 pounds—all to be good.

When the time in October fixed for the completion of the contract arrived, according to the testimony for the plaintiff the plaintiff had at Etlan forty-one cattle taken from the herd which was at Blankenbaker's, as aforesaid, in the preceding spring, the quality of which had been approved by Johnson, as aforesaid, and he tendered the delivery of those forty-one head of cattle on account of his obligation under said contract. Fletcher, acting for Johnson (or whose action in that behalf was subsequently and before suit ratified by Johnson), rejected all of such forty-one head of cattle, except thirteen, on account of their poor quality, according to the plaintiff's testimony—*i. e.,* as not being *"good"*—claiming that all of the 100 cattle covered by the contract should be "good," and that fifty of them should weigh 1000 to 1100 pounds and fifty of them should weigh 1100 to 1200 pounds. The plaintiff further testified that "Fletcher, having picked out the thirteen cattle, said he could get no more of the quality he desired out of that bunch; * * * then weighed the cattle and only three weighed 1000 pounds; that (plaintiff) stated to Fletcher that under his contract with Johnson the cattle were to weigh from 1000 to 1200 pounds"; that when Fletcher again mentioned the requirement that all the cattle should be good and should have the weight insisted upon as aforesaid, "and suggested that he would take all (plaintiff) could furnish which came up to" (such requirements), "and would look at the cattle at the home place," plaintiff said: " 'If I have not sold you these cattle, I have sold you none at all and it

is no use to take any.' That Fletcher then left and that (plaintiff) later sold part of the cattle—41 in number—" (presumably the 41 next above mentioned) "to Yowell & Lewis for $9.60; that such cattle aggregated 40,985 pounds when weighed at Etlan; * * and that the cattle at (plaintiff's) home, that is the other fifty-nine" (embraced in the contract) "were the heaviest cattle; that the market value of such cattle not sold to Yowell in October, when Fletcher was there and would not take the cattle, was ten cents per pound."

Other testimony in the case is referred to in the opinion of the court.

*Wm. M. Fletcher, Edwin H. Gibson* and *Grimsley & Miller,* for plaintiff in error.

*Jno. S. Chapman* and *N. G. Payne,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

In our view the decision of a single question of fact presented by one of the assignments of error is decisive of the case. That question is as follows:

1. Is the verdict contrary to the evidence in its finding in effect that the plaintiff complied with the contract in the matter of the weight of the cattle?

This question must be answered in the affirmative.

From all of the testimony in the case the jury were warranted in finding (and, hence, after the verdict aforesaid, we must so find) that the contract in suit provided, in substance, as follows:

That the plaintiff, in the spring of 1919, at his home in Madison county, sold to the defendant, Johnson, 100 cattle at eleven and three-fourths cents per pound to be weighed and

delivered on October 1, 1919, forty-one at Etlan in Madison county, and the residue of fifty-nine at the home of the plaintiff, to weigh from 1000 to 1200 pounds each when delivered, with no warranty, express or implied, as to quality, except that they were to be taken from the herds of cattle which the plaintiff had at Collins', Kirtleys', Seville's and Blankenbaker's at the time the contract was entered into, and that the five head of cattle at Seville's were at that time as good as those in such other herds.

[1] The jury was plainly warranted by the evidence in finding that the defendant, Johnson, did not rely upon any representation of the plaintiff with respect to the quality of the cattle except those at Seville's. On the contrary there is ample testimony in the case to the effect that Johnson examined the cattle from which the 100 embraced in the contract were to be taken, except those at Seville's, before entering into the contract, for the purpose of satisfying himself as to their quality. And the testimony of the plaintiff on the subject, the credibility of which was solely for the jury, is sufficient to warrant the finding that when the contract was entered into the defendant, Johnson, expressed himself as satisfied with the quality of the herds of cattle (after the elimination of a Holstein steer), from which herds the 100 head embraced in the contract were to be subsequently taken, which herds included the cattle which the plaintiff proposed to deliver under the contract. This concludes against the defendant, Johnson, any claim that there was in the contract any express or implied warranty as to the quality of the cattle, except those at Seville's, as to which there is no controversy in the case.

[2-3] But, when all of the testimony is regarded in the most favorable light for the plaintiff, there is no testimony in the case to support a finding of the jury that the plaintiff had the right under the contract to require the defendant, Johnson, to accept delivery of any cattle under the weight

of 1000 pounds; and this is precisely what the plaintiff did require, by his tender of the forty-one head of cattle set forth in the statement preceding this opinion, only three of which weighed as much as 1000 pounds, and by his ultimatum that all of the forty-one head of cattle must be accepted under the contract or he would deliver none of the 100 head of cattle embraced in the contract.

It is true that the plaintiff was within his rights under the contract in so far as he insisted that the defendants could not object to the quality of the cattle of which he tendered delivery, so long as they came from the herds which they had examined as aforesaid. But this did not excuse the plaintiff for not himself acting within his contract rights. Instead of himself keeping within the contract, he went outside of it and required that delivery of all of the forty-one head of cattle tendered as aforesaid should be accepted regardless of their weight per head. By this conduct the plaintiff himself breached the contract, which, under the circumstances of the case, bars him from any recovery of damages for breach of the contract by the other party thereto.

It is true that the aggregate weight of the forty-one head of cattle, delivery of which was tendered as aforesaid, was found a few days thereafter to be 40,985 pounds, very nearly an average of 1000 pounds each. But the contract did not provide for average weight. The minimum weight of each head of the cattle as required by the contract was 1000 pounds. At law a contract of sale is not regarded as performed by the seller except by the delivery or tender of the exact quantity called for by the contract. 24 Am. & Eng. Ency'l of Law (2nd ed.), 1077. Citation of authorities to the same effect might be indefinitely multiplied.

The plaintiff, on cross-examination, testified that, after the examination aforesaid by Johnson, in the preceding spring he (the plaintiff) had sold to one Carpenter "fifteen

cattle out of the cattle that were being fed at Blanken-baker's, * * but that he had a contract with Carpenter to buy the cattle back in the fall so that he could put them in with the 100 cattle he was selling Fletcher and Johnson."

The following is said on this subject in the brief for the plaintiff: "Certainly the jury decided according to the evidence that Hoffman" (the plaintiff) "had the Carpenter cattle ready for delivery to Johnson in the fall in accordance with his contract. There is no evidence showing that Hoffman had to have the Carpenter cattle at Etlan, therefore, why should he have taken them there? Hoffman had the number at Etlan, viz., forty-one, that the contract called for, the same forty-one that Johnson and Fletcher had inspected at Blankenbaker's and with which * * * the petitioner" (Johnson) "was perfectly satisfied."

One fallacy in this position is that, according to the evidence for the plaintiff himself, Fletcher, acting for Johnson, was not satisfied with the weight of the forty-one head of cattle mentioned. And if it be taken as a fact that the plaintiff was able and willing to deliver these Carpenter cattle in making up the remaining number of fifty-nine embraced in the contract, in addition to the forty-one aforesaid, that in no way relieved the plaintiff of the dilemma in which he placed himself by insisting, without contract right to do so, that all of the forty-one head of cattle be accepted under the contract regardless of their weight, or that none of the 100 would be delivered by him. The plaintiff thereby took the unqualified position that the forty-one head of cattle complied in all respects with the requirements of the contract and upon the non-acceptance of those cattle by the other party to the contract the plaintiff elected to and did breach the whole contract. This position being untenable as aforesaid, the plaintiff has no right of action for damages against Johnson for any breach of the contract on his part.

[4] The rule is strict and inflexible that a plaintiff has no right of action for damages for breach of contract where he himself has breached the contract. He may under certain circumstances have such right of action where he has not performed the contract on his part, but that is only where the circumstances are such that under the rules of law applicable he is excused from such performance, so that his conduct cannot be regarded as a breach of the contract; and even then he has no such right of action unless it appears from the evidence in the case that he was willing and was either able or would have been able to fully perform the contract on his part, but for his having been relieved from that duty by the excusing circumstances. Plainly the case before us is one in which the plaintiff, according to his own testimony, was not willing under any circumstances to fully perform the contract on his part, in this, that as to the forty-one head of cattle he expressly refused to deliver cattle of the weight per head required by the contract. There is no controversy before us as to the law on the subject; hence we do not enter here upon a specific consideration of the authorities. The fact last mentioned is decisive of the case against the plaintiff.

The judgment against the defendant, Johnson, under review will therefore be set aside and annulled, the verdict against such defendant set aside, and, under the statute on the subject (sec. 6365 of the Code), this court will enter judgment in favor of the plaintiff in error, Johnson, dismissing the action against him, with costs.

*Reversed and dismissed.*