275 P.2d 185

**Jim SAMPLES and Dorothy Samples,
Plaintiffs-Appellees,**

**v.**

**J. W. ROBINSON and Mabel I. Robinson,
Defendants-Appellants.**

**No. 5780.**

Supreme Court of New Mexico.

Sept. 8, 1954.

Rehearing Denied Oct. 11, 1954.

Frazier, Cusack & Snead, Roswell, for appellants.

Carpenter, Eaton & Phelps, Roswell, for appellees.

McGHEE, Chief Justice.

This appeal followed the foreclosure of a mortgage on a ranch and personal property, followed by the entry of a deficiency judgment from which an appeal was also taken.

The contract for the sale of the ranch, the bill of sale of the personal property, the note evidencing the deferred payments and a mortgage securing the indebtedness were executed simultanously and placed in escrow in a bank pending the approval of title and the making of a substantial down payment, following which the escrow holder delivered the deed and bill of sale to the purchasers and the note and mortgage to the sellers. The purchasers went into possession of the deeded lands.

The contract provided for annual payments of $2,000 each, beginning on April

15, 1953, with interest, but it did not provide all deferred payments might be declared due on default, or that the note or mortgage should provide for attorney's fees, and neither did the mortgage; but the note contained both such provisions.

The contract did not mention two butane tanks on the place but they were included in the bill of sale. There was an indebtedness of some $143 owing on one of the tanks to a butane dealer who later repossessed it following the refusal of the buyers to pay such balance.

The contract provided for the transfer of an oral year to year lease on a 320 acre tract of partially fenced grazing land without permanent water, located six miles south of the ranch, which lease by its terms expired on the first of January following the transaction. The buyers did not get possession of the leased land, and the following year it was sold to Col. Lusk in whose pasture it was situated.

The first contention made by the buyers (appellants) is that as neither the contract nor mortgage contained a provision for accelerating the deferred payments and the recovery of attorney's fees, in event the buyers should default, the trial court erred in decreeing foreclosure of all deferred payments and in awarding attorney's fees, saying there was no merger of the contract and note. We do not believe merger is an issue in this case, but that we

have for construction the contract, note and mortgage which were executed simultaneously as one entire transaction.

It seems to be the universal rule that where the provisions of a note concerning the debt or payment thereof vary from the terms of the mortgage securing it, the provisions of the former control. Also, the note and mortgage are construed together as if they were parts of the same instrument, when they are made at the same time and in relation to the same subject as parts of one transaction constituting one contract. 1 Jones on Mortgages (8th ed. 1928) § 89.

The rule is stated in 9 Thompson on Real Property (Perm. ed., 1940) § 4921, as follows:

"Ordinarily, a note and trust deed or mortgage executed contemporaneously to secure the payment of an existing debt constitute one contract, and are construed together. A note and mortgage or note and trust deed may supplement each other, but, where they are at variance, the terms of the note govern, since it is the principal obligation and the mortgage or trust deed is merely an incident thereto. The note and mortgage may supplement each other in stating the debt secured; as where the mortgage states the rate of interest, which is omitted from the note, or where the note provides for

interest at a certain rate per annum, and the mortgage provides for the same rate of interest payable annually; and, inasmuch as the mortgage provides for something respecting which the note was silent, the mortgage governs the contract in this respect. If the mortgage provides that upon any default in the payment of interest the whole mortgage debt shall become due, a note representing the mortgage debt, though it does not contain this provision, becomes due upon such default. A like provision in the mortgage note affects the mortgage from which it is omitted. When there is any uncertainty as to the amount secured by the mortgage, the notes referred to in it are competent evidence to explain the language as against the mortgagor, or one who purchased the equity of redemption with notice of the notes intended to be secured. Such evidence is not contradictory to the language of the mortgage, but explanatory."

The provisions of the note as to acceleration and attorney's fees do not contradict the contract or mortgage, but supplement them, and the contentions of the buyers on this matter are not well taken.

The buyers next contend the deal was an entire one, and that because of the failure of title of the butane tank of the value of $250, and to transfer the lease on the dry, unfenced half-section six miles away, the sellers were not entitled to foreclose, and that they, the buyers, should have been allowed to rescind in accordance with their cross complaint.

The trial court found the lease was without value to the ranch, and as the owner of such land had sold it early in the following year to another, as it was his right to do, the buyer had not suffered damage on account thereof. It also found the buyers knew the lease was without value to the ranch. It further found the buyers knew the butane tank in question did not belong to the sellers and that its inclusion in the bill of sale was due to inadvertence and mistake of the scrivener.

The buyers do not attack the sufficiency of the evidence to sustain the findings as to the lease and butane tank, but say their evidence that they would not have bought the ranch had the lease not been included is undisputed, and they were entitled to the possession of everything purchased or to rescission. The refusal of the sellers to allow credit for the butane tank was stated by the buyers as their reason for not making the payment due in April, 1953, so we will first get the tank out of the way.

In their argument as to the acceleration and attorney's fees features of the case, the buyers wrapped the contract about them and contended the provisions of the

note and mortgage could contain nothing not provided for in such contract, while as to the butane tank they do not mention the contract but stand squarely on the terms of the bill of sale and say that because of the failure of title to such tank the note and mortgage may not be enforced. Testimony showing the tank was included by mistake was admitted over the strong objection of the buyers, without a pleading on the part of the sellers alleging the mistake and asking that the bill of sale be reformed in such respect. The buyers say this was error, and we agree they are correct in this regard, but the buyers failed to include an alternate plea for a partial abatement of the purchase price or a credit on the note, so the butane tank stays in the case and we will determine whether its loss and the failure of the sellers to deliver possession of the leased half-section blow up this $35,490.34 deal, that being the purchase price.

There must be a substantial failure of consideration to warrant rescission. The general rule is stated in 12 Am. Jur. (Contracts) § 440, as follows:

"It is not every breach of a contract or failure exactly to perform—certainly not every partial failure to perform—that entitles the other party to rescind. A breach which goes to only a part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom. A rescission is not warranted by a mere breach of contract not so substantial and fundamental as to defeat the object of the parties in making the agreement. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract or the failure to perform the contract must be in respect of matters which would render the performance of the remainder a thing different in substance from that which was contracted for."

See also 1 Black on Rescission and Cancellation (2nd ed., 1929) § 198; 5 Corbin on Contracts (1951) § 1104; and the following cases illustrative of the rule: Watchorn v. Roxana Petroleum Corp., 8 Cir., 1925, 5 F.2d 636; White v. Massee, 1927, 202 Iowa 1304, 211 N.W. 839, 66 A.L.R. 1434; Summers Fiber Co. v. Walker, 1908, 109 S.W. 883, 33 Ky.Law Rep. 153; Speed v. Bailey, 1927, 153 Md. 655, 139 A. 534; Holderby v. Harvey C. Taylor Co., 1920, 87 W.Va. 166, 104 S.E. 550.

The buyers cite Armijo v. Nuchols, 1953, 57 N.M. 30, 253 P.2d 317, in support of

their claim they are entitled to rescind for partial failure of consideration, but this case cannot give them comfort. There Armijo had purchased a ranch in a forest reserve on which to run sheep he had to move from a drought stricken range, and the seller knew he intended to use it for that purpose. The part of the forest on which the seller had a permit to run his cattle was a cattle range only and the Forest Service would not give its consent to more than a temporary use for sheep unless Armijo would buy out a small landowner in the range, which he was unable to do. With knowledge of all these facts Armijo affirmatively later ratified the contract, and, therefore, he was denied rescission.

The finding of the trial court that the leased land was not a material part of the transaction finds support in the letter of Robinson to Samples dated April 3, 1953, which, omitting formal parts, reads as follows:

"I am writing you in regard to the payment on the ranch. I feel like I will be able to take care of the principal and interest, less half of the taxes that you promise to pay, also the butane tank which has a balance on it and per our agreement. This was to be clear of debt. Will deduct the taxes and balance on tank and pay the rest to the First National Bank in Roswell, New Mexico. Hope you are doing all right in your new home. We are still very dry here."

The seller Samples answered under date of April 6, saying it was all right to hold out the tax money, but as he had explained about the tank being leased for so much per year he was not paying that. It was not until after one of the buyers had consulted an attorney and on April 28, 1953, that he wrote complaining about not getting the lease and telling how much he had counted on it.

The trial court did not err in denying rescission.

█ Copies of the note and mortgage were attached to the complaint, and claim was made the note drew interest from April 1, 1952, instead of 1953, the correct date. The error was not noted by counsel or the trial court, so judgment was given for interest for one year too much, with a corresponding erroneous increase of attorney's fees. It was not until the case came here the buyers discovered the error. While the attorney for the sellers chided the attorney for the buyers at the oral argument for not earlier discovering the mistake and also as to the quality of the assignment or point on the matter, he acknowledges the error and does not oppose our ordering a remittitur, and we will direct that this be done within fifteen days

after the filing of our opinion as a condition of affirmance.

The trial court fixed the amount of a supersedeas bond at double the amount found due in the judgment, taking the view that such was required by our Rule 9. The buyers contend as the decree ordered the property sold and the net proceeds applied to the debt, with a provision for the entering of a deficiency judgment (all of which was done), that the decree was not a money judgment, and that a supersedeas bond in a much lower amount should have been set; that they were unable to make the large bond and such resulted in their being denied due process of law.

The judgment appears to us to be a plain money judgment for a total of $29,751.36, with interest from November 15, 1953, and for costs, with a further provision for the advertisement and sale by a special master, a report of the sale, the deposit in court of the proceeds and for the entering of a judgment for any deficiency.

We are of the opinion such a judgment as was rendered can only be superseded by the giving of a bond in double the amount of the judgment under our Rule 9, which reads in material parts as follows:

"There shall be no supersedeas upon any final judgment or decision of any of the district courts in which an appeal has been taken * * * unless such appellant * * * shall, within sixty days from the date of entry of such judgment or decision, or some responsible person for him, execute a bond to the adverse party in double the amount of such judgment complained of * * * conditioned for the payment of such judgment, and all the costs that may be adjudged against him in case such appeal * * * be dismissed or the judgment or decision of the district court be affirmed. * * * In case the decision appealed from * * * is for a recovery, other than a fixed amount of money, then the amount of such bond, if an appeal be taken, shall be fixed by the district court or the judge thereof, * * * conditioned that the appellant * * * shall prosecute such appeal * * * with diligence, and that if the decision of the court below be affirmed or the appeal * * * dismissed, he will comply with such judgment and pay all costs and damages finally adjudged against him, including legal damages, if any, caused by the taking of the appeal, * * *."

Under statutes identical in effect with our rules the following cases hold a bond

in double the amount of the judgment is required although provision is made in the degree for the foreclosure of a lien and a sale of the property: Flynn v. Des Moines & St. L. Ry. Co., 1883, 62 Iowa 521, 17 N.W. 769; Smead v. Stuart, 1900, 194 Pa. 578, 45 A. 343; Slaughter v. Texas Life Ins. Co., Tex.Civ.App., 1919, 211 S.W. 350; State ex rel. Commercial Nat. Bank v. Superior Court, 1896, 14 Wash. 365, 44 P. 859; and State ex rel. Washington Bridge Co. v. Superior Court, 1895, 11 Wash. 366, 39 P. 644.

Upon the entry of the main judgment the buyers immediately asked and were given an appeal, but did not give a supersedeas bond, and the special master thereafter sold the property, made due report to the court, and a deficiency judgment of $10,268.08 was entered against the buyers. It is asserted when the appeal was taken the trial court lost jurisdiction of the case and that the subsequent sale and deficiency judgment were void. We cannot agree with this claim. Rule 9 plainly provides an appeal may be taken without the giving of a supersedeas bond but that in such event the plaintiff may proceed to enforce his judgment, which is what was done here.

The judgment will be affirmed conditioned on the filing of the remittitur to correct the errors in interest and attorney's fees as above stated, but because of the condition of the record in this case the appellants will not recover any costs here.

It is so ordered.

SADLER, COMPTON, LUJAN and SEYMOUR, JJ., concur.

On Motion for Rehearing.

McGHEE, Chief Justice.

Upon consideration of the motion for rehearing in this case we find the defendants did plead a failure of consideration in the sum of $250 they lost because a tank of that value was repossessed by the butane dealer. Because of the failure of the plaintiffs to seek reformation of the bill of sale as to this tank the defendants are entitled to an additional credit for $250, but we adhere to our former holding that the failure of consideration in this small amount, considering the large amount involved, does not justify rescission.

If the plaintiff will file an additional remittitur for $250, with interest at six percent per annum from date of judgment, within ten days from the filing of this opinion the judgment will stand affirmed, as we deem the other matters raised in the motion to be without merit.

It is so ordered.

SADLER, COMPTON, LUJAN and SEYMOUR, JJ., concur.