**MILNER HOTELS, INC., a Kentucky corporation authorized to do business in the State of West Virginia, Plaintiff,**

v.

**NORFOLK & WESTERN RAILWAY COMPANY, a Virginia corporation authorized to do business in the State of West Virginia, and Norfolk Southern Corporation, its parent company, Defendants.**

Civ. A. No. 1:91–1078.

United States District Court,
S.D. West Virginia,
at Bluefield.

May 20, 1993.

---

J.W. Feuchtenberger, Stone, McGhee, Feuchtenberger & Barringer, Bluefield, for plaintiff.

Wade T. Watson, Sanders, Watson & White, Bluefield, for defendants.

## OPINION

FABER, District Judge.

### I.

The Milner Hotel, constructed near the turn of the century, is located directly across Princeton Avenue from the Norfolk Southern railroad yard in downtown Bluefield, West Virginia. In 1977, the Norfolk & Western Railway Company ("N & W" or "railroad"), now a subsidiary of Norfolk Southern,[1] entered into a contract with Milner Hotels, Inc. ("the Milner") to house and feed its transient train crews and other nonresident employees. This contract, as most recently amended in 1989, required the N & W to pay to the Milner $20.25 per day for each room occupied by a railroad employee, but not less than an amount sufficient to cover sixty room occupancies or $1,215.00 per day. This contract with the N & W provided essentially all of the Milner's business. The hotel had 102 rooms and approximately ninety of these were set aside at all times for the railroad's use. The hotel appears to have actually discouraged other business.

In exchange for the N & W guaranteeing occupancy, the hotel agreed to provide certain services as set forth in section 1 of the contract which reads, in pertinent part:

The services to be performed at said Hotel by the Operator for Railroad's employees include the following. . . .

(d) Maintaining at all times good, clean and sanitary conditions throughout the said hotel;

(e) Observing and complying with all local, state or federal laws and regulations pertaining to the operation of the said Hotel. . . .

Section 10 of the contract was its termination clause. Section 10, as amended, provided:

This agreement shall continue in full force and effect from month to month until ter-

---

1. Norfolk Southern Corporation, named originally as a defendant in this action, was previously dismissed by agreement of the parties.

minated by either party giving to the other party at least thirty (30) days prior written notice. However, in the event of any default by either party hereto in the performance of its obligations hereunder which is not cured within 30 days of receipt of notice thereof, the other party may, in addition to other remedies available, terminate this agreement.

At about 7:30 a.m. on March 10, 1991, a Sunday morning, a fire broke out on the second floor of the Milner, apparently caused by an electrical malfunction in an oil heater. The fire was quickly contained and damage from the blaze was limited to a few rooms on the second floor. Smoke damage, however, permeated the entire building and there was extensive water damage from efforts to put out the fire.

The railroad removed all of its employees from the hotel pending repair of the damage. The Milner immediately began to clean and deodorize the building and told the railroad it would be available for reoccupancy in a few days. The railroad had received complaints from its employees about the condition of the Milner and these complaints escalated after the fire. The railroad insisted on a thorough inspection of the building before it would allow reoccupancy by its employees.

This inspection was conducted on March 15, 1991, by representatives of the railroad and of the Milner and by Chief R.M. Poe of the Bluefield Fire Department. A detailed written memorandum of the inspection was prepared which documents numerous violations of electrical and fire codes and identifies the presence of crumbling, friable asbestos at several locations in the hotel. G.O. Turner, Pollution Control Coordinator for Norfolk Southern, who was present for the inspection, advised that airborne transmission or tracking by service personnel and occupants could spread fibrous particles of asbestos from virtually any area where it was located to all other areas of the hotel. The general manager and resident manager of the hotel were informally advised by F.A. Williams, Jr., Superintendent of Terminals for Norfolk Southern, that these conditions would have to be remedied before the railroad would allow its employees to reoccupy the hotel. A written copy of the memorandum of the inspection setting out the railroad's position with regard to reoccupancy was provided to Derek Arbogast, General Manager of the Milner, within a week of the inspection. Admitting that it was not in compliance with the codes and that the repair work needed to be done, the Milner obtained several estimates from contractors for completion of the electrical repairs and removal of the asbestos. Estimates of the total cost of this work ranged from $60,000 to $120,000. The estimates themselves reflect the extent of work necessary to bring the hotel up to applicable code standards and to remove or otherwise abate the asbestos problem. An estimate obtained from Hico Specialty Contractors refers to asbestos pipe insulation in the fifth floor hallway, in the basement mechanical room and in a basement room adjacent to the mechanical room; it also refers to boiler insulation and ceiling plaster which may contain asbestos. An estimate obtained from Allied Refrigeration, Inc. to complete the electrical repairs stated: "[T]his is a very difficult job to estimate because of the magnitude of upgrading necessary."

Before it undertook to have the work done, the hotel asked the railroad for assurances that the railroad would reoccupy the building upon completion of the work. The railroad refused to give such assurances and, on April 9, 1991, mailed written notice to the hotel that it was terminating the Agreement. In its Complaint, the Milner admits receiving this written notice on April 11, 1991. The notice complies in all respects with the notice provisions of the contract. Thereafter, the hotel's owners elected not to complete the repairs, but instead sold the hotel and its contents at public auction. The auction was held on April 26, 1991, and realized the total sum of $56,000 for the building and its contents.[2]

In this civil action, originally filed in the Circuit Court of Mercer County, West Virginia, and removed by defendants to this court,

---

2. The $56,000 figure comes from plaintiff's complaint. There was deposition testimony that the actual amount realized was between $70,000 and $74,000.

344

plaintiff Milner Hotel seeks damages for breach of contract. The Milner first maintains that the contract obligates the railroad to pay for rental of rooms at the contract rate and to compensate Milner for lost revenues from food service and concessions from the date of the fire until May 11, 1991, the date the termination was effective, regardless of the fact that the hotel was not occupied by the railroad's employees at any time after the March 10, 1991 fire.

Second, the Milner charges that the railroad wrongfully terminated the contract, causing the plaintiff a loss of revenues for food, lodging and concessions, and forcing the Milner to sell the hotel at a significant loss. The Milner maintains that the fire damage was corrected by April 1, 1991, at which time the hotel was restored to habability in spite of continuing code violations and the presence of friable asbestos. The Milner contends that there was no indication that the hotel would have to be closed because of the code violations and that it would have made the necessary repairs if the defendant had returned its personnel to the hotel. The Milner also contends that the railroad had been planning to terminate the contract for some time prior to the fire and seized upon the fire as an excuse to do what it wanted to do all along. The Milner demands judgment in a sum in excess of $644,000.

The railroad has moved for summary judgment, contending that it had the right to terminate the Agreement and that the plaintiff was itself in breach of its obligations under Section 1 of the Agreement. Summary judgment is appropriate only when, viewing the facts and the inferences to be drawn therefrom in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Miller v. Leathers*, 913 F.2d 1085 (4th Cir. 1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). A fact is deemed "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment should be cautiously invoked so that no litigant will be deprived of a trial on a disputed issue of material fact. *Tunstall v. Brotherhood of Locomotive Firemen*, 69 F.Supp. 826 (E.D.Va.1946), *aff'd*, 163 F.2d 289 (4th Cir. 1947), *cert. denied*, 332 U.S. 841, 68 S.Ct. 262, 92 L.Ed. 413 (1947). However, the entry of summary judgment is, upon motion, mandated against a party who fails to make a showing sufficient to establish the existence of an essential element of its case on which it will hear the. burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

II.

■ Section 10 of the Agreement, as amended, gives the parties an absolute right to terminate it upon thirty days written notice. No cause for termination is necessary. It is undisputed that the railroad gave written notice of termination and that this notice was received by the Milner on April 11, 1991. The Agreement, therefore, ended on May 11, 1991. While the railroad has argued that the second sentence of Section 10 providing for notice of default and subsequent termination on failure to cure was also triggered by the railroad's actions, the court deems it unnecessary to consider that argument. It seems clear beyond question that the absolute right to terminate on thirty days written notice provided for in the first sentence of Section 10, as amended, was properly exercised by the railroad bringing the life of the Agreement to a close on May 11, 1991.

■ Since the Agreement was properly terminated, the defendant cannot be held liable for any loss sustained by the plaintiff after the effective date of that termination. It is a fundamental principle of the law of contracts that a plaintiff is only entitled to such damages as would put him in the same position as if the contract had been performed. *Bryant v. Peckinpaugh*, 241 Va. 172, 400 S.E.2d 201 (1991); *Associated Stations, Inc. v. Cedars Realty and Development Corp.*, 454 F.2d 184 (4th Cir.1972). In other words, a plaintiff is not entitled to damages beyond his actual loss attributable to defendant's breach. *Horn v. Bowen*, 136 W.Va. 465, 67 S.E.2d 737 (1951). Here, insofar as the termination was concerned, the

contract was performed by the railroad; thus, there was no breach entitling the Milner to damages arising from the termination. Since the railroad had the unqualified right to terminate its Agreement with the Milner on thirty days notice, the costs to the Milner occasioned by loss of the railroad's patronage and the low price realized by the sale at auction of the hotel and its contents are not damages recoverable from the railroad. These losses to the Milner do not flow from any contractual breach by the N & W but are, instead, simply the economic consequences to the Milner of loss of the railroad's business. The railroad had negotiated into the contract the right to do exactly what it did—terminate its Agreement with the Milner and take its business elsewhere.

■ The plaintiff argues that during the life of the Agreement the railroad was essentially the Milner's sole source of business and revenue, and that this long-term relationship defined the defendant's obligations with regard to termination of the contract. The course of dealing of the parties is, however, under West Virginia law as well as under the general law of contracts, only a method of construing an ambiguous agreement; if the express wording of the agreement is clear, the court must give it effect without reference to the parties' conduct. *Breedlove v. Pennzoil Co.,* 184 W.Va. 44, 399 S.E.2d 187 (1990); *Columbia Gas Transmission Corp. v. E.I. du Pont De Nemours & Co.,* 159 W.Va. 1, 217 S.E.2d 919 (1975). The Agreement is clear, and unambiguous language gave the railroad the right to terminate it upon thirty days notice for any reason or for no reason.

## III.

■ It remains to be considered only whether the railroad is liable for payment of rent and damages for lost food service and concessions for the period between the March 10, 1991 fire, when it removed its employees from the hotel, and the effective date of the termination. The cases establish that, under West Virginia law, a party who sues for damages for breach of contract must show his own compliance with the contract or that he was prevented or relieved from compliance by the defendant. *Jones v. Kessler,* 98 W.Va. 1, 126 S.E. 344 (1925), which follows *Johnson v. Hoffman,* 130 Va. 335, 107 S.E. 645 (1921). More recently, the West Virginia Supreme Court of Appeals affirmed this general rule in a dictum in *Franklin v. Pence,* 128 W.Va. 353, 36 S.E.2d 505 (1945). For it to be barred from recovery of damages by its own breach, the plaintiff's breach must be material. *Holderby v. Harvey C. Taylor Co.,* 87 W.Va. 166, 104 S.E. 550 (1920); *J.W. Ellison, Son & Co. v. Flat Top Grocery Co.,* 69 W.Va. 380, 71 S.E. 391 (1911).

■ Normally, the issue of whether a breach is a material one is a question of fact for the jury. *See, e.g.,* Farnsworth, *Contracts,* Section 8.16 and cases cited there. Where the facts presented are not in dispute, however, the issue of whether a contract has been performed or breached in a material way is a question of law for the court to decide. 17A Am.Jur.2d, *Contracts,* § 608 (1991). The rule is the same where the evidence presented is subject to only one reasonable conclusion. An instructive case on this point is *Citizens Home Insurance Co. v. Glisson,* 191 Va. 582, 61 S.E.2d 859 (1950). This case was an action by an insurance salesman against his employer for breach of a contract of employment. The plaintiff suffered a stroke and was discharged by the defendant for the reason that he was incapacitated from fulfilling his obligations under the contract. The case went to trial and the jury returned a verdict in favor of the plaintiff. On appeal, the Supreme Court of Appeals of Virginia reversed, holding that the evidence established plaintiff's illness and inability to perform his duties under the contract justified termination of it by defendant as a matter of law. In its opinion, the court observed that whether or not justification exists for termination of a contract under the facts and circumstances of a particular case, is usually a question of fact to be determined by a jury. But, in this case, the court concluded, where the facts were not in dispute, it was for the court to make the decision.[3] *See also, Toney*

---

**3.** In contrast are cases such as *Spotsylvania School Board v. Seaboard Surety Co.,* 243 Va.

202, 415 S.E.2d 120 (1992), holding that the issue of whether a contractor's violation of build-

*v. Sandy Ridge Coal & Coke Co.*, 84 W.Va. 35, 99 S.E. 178 (1919), (holding that where the evidence of breaches of a contract by defendant is full, clear and definite, the trial court may properly direct a verdict for the plaintiff). Therefore, in this case, where the underlying facts are not in dispute, the decision of whether plaintiff's breach is a material one preventing it from recovering on the contract is a question of law for the court.

■ There can be little question that the Milner breached its covenant under Section 1 of the contract to keep the hotel in a good, clean and sanitary condition and comply with all laws and regulations pertaining to operation of the hotel. Numerous violations of the electrical and fire codes, plus the presence at several places in the hotel of crumbling, friable asbestos which could be blown throughout the building or carried throughout the building upon the feet of workers and occupants, placed the Milner in violation of its obligations under Section 1 of the Agreement. If this breach was a material one, the railroad had good cause to cease its performance under the contract before the effective date of termination and the Milner cannot recover damages for the railroad's non-performance during the period between the fire and the termination date. The Restatement (Second) of Contracts § 241 (1981) outlines the circumstances which are significant in determining whether a breach of contract is material. That section reads as follows:

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
>
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances, including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

The application of these rules to the facts of the case at hand compel the conclusion that the Milner's breach of the contract was a material breach. First, the railroad was, by the Milner's breach, completely deprived of the benefit it reasonably expected under the contract, that is, a safe, clean hotel in which to house its employees. The railroad could hardly be expected to subject its employees to the dangers of faulty wiring and airborne asbestos particles once the post-fire inspection revealed the existence and extent of those dangers. Second, there appears to be no way that the railroad could be adequately compensated in damages for the difference between what it bargained for, that is, a safe, clean hotel, and what it stood to receive from the Milner if it had allowed its employees to remain in the hotel. Third, the Milner will, in effect, suffer a forfeiture if this breach is deemed material.[4] The comment and illustrative notes to section 241 in Restatement (Second) of Contracts make clear that the breach is less likely to be regarded as material if it occurs late, after substantial preparation or performance, and is more likely to be regarded as material if it occurs early, before such reliance. Here, the Milner would have had a much stronger argument if it had incurred costs or otherwise undertaken to complete the necessary repairs to make the hotel conform to the requirements of the contract. The Milner, however, did just the opposite—after esti-

ing codes was a "substantial" breach allowing termination was a question of fact for the jury. In that case, the builder admitted that his work may have constituted violations of the contract documents and the building code, but there was conflicting evidence as to the scope and extent of the violation.

4. Since the Agreement was properly terminated by the railroad, however, all that would be forfeited is the remainder of the contract term after notice of termination had been given, but before it became effective.

mates were received, the Milner refused to take any further corrective action in the absence of an additional promise from the railroad that it would return its employees to the hotel once the repairs were made. Fourth, once the Milner had refused to make the repairs and had sold the hotel, as it voluntarily elected to do, there was no likelihood whatsoever that it could cure its failure to perform. With regard to the fifth consideration under section 241 of the Restatement (Second) of Contracts, the extent to which the Milner's performance comports with standards of good faith and fair dealing, there is no evidence that the Milner's actions were not in good faith and in a spirit of fair dealing. Balancing the five factors, however, leads inescapably to the conclusion that the Milner's breach was a material breach; the Milner's good faith cannot overcome the impact of the other four factors.

The Milner's contention that its failure to comply with the electrical and fire codes and the presence of asbestos in the hotel are not material breaches is based on its assertion that these defects were not so serious as to render the hotel unoccupiable. The Milner has, however, offered no evidence to this effect in response to the railroad's motion for summary judgment—it only asserts in its brief that it will offer such evidence at trial. Under the rule of *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), once the railroad had established that the condition of the hotel was in violation of the Agreement, it was incumbent upon the Milner to come forward with such evidence in response to the railroad's motion. Furthermore, the Milner's conduct subsequent to the fire is inconsistent with its present position that these defects did not render the hotel unoccupiable. The Milner responded to the railroad's refusal to reoccupy the hotel by accepting the inspection's determination of the scope of repairs needed and obtaining estimates of the cost to perform such work. The Milner indicated it would perform these repairs if the railroad would guarantee to return its employees to the hotel when the work was done. Thus, the Milner's actions at that time were entirely consistent with the railroad's position that the hotel was not occupiable in the absence of the electrical

repairs and asbestos abatement, and further supports the conclusion that the Milner was in material breach of the Agreement.

IV.

Accordingly, this court, finding that there is no material question of fact to be resolved, concludes as a matter of law:

First, that the defendant railroad properly terminated the Agreement with plaintiff Milner Hotel effective May 11, 1991; and,

Second, that the Milner's violation of fire and electrical codes and the presence of friable, airborne asbestos in the building constituted a material breach of the Milner's obligations to provide a clean, safe environment for the railroad workers-employees and to comply with applicable laws and regulations concerning the operation of a hotel. This material breach by the Milner absolves the railroad from any obligation to compensate the Milner for lost revenues for rent, food service and concessions during the period between the fire and the date termination of the contract became effective. The railroad is, therefore, entitled to summary judgment as a matter of law and the court will enter an appropriate judgment order to that effect consistent with this opinion.